BROWN & SHARPE MANUFACTURING COMPANY *vs.*
ANTHONY GIACOPPA.

JULY 23, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This cause is before us for determination upon two questions of doubt and importance certified by the superior court in accordance with general laws 1938, chapter 545, § 5. Similar provision for certification is made by article III, §·12 of the workmen's compensation act, G. L. 1938, chap. 300.

The proceeding was begun by the employer's filing with the director of labor, under art. III, § 13 of the workmen's compensation act, a petition to review a certain preliminary compensation agreement. Such petition alleged, in substance, that on October 11, 1940 the respondent suffered an injury by accident arising out of and in the course of his employment; that thereupon petitioner and respondent entered into a preliminary agreement which was approved by the director of labor on November 13, 1940; that the petitioner had paid all medical and hospital bills of the respondent and also had paid the stipulated compensation "for 5 4/12 weeks, which was the duration of the respondent's incapacity"; that the respondent was absent from work from October 14 to October 22, 1940 and from October 31 to December 2, 1940; that the respondent as employee was earning a wage rate equal to or in excess of that which he was earning at the time of his injury and had received such wage rate since he returned to work. It then prayed that the preliminary agreement be reviewed, upon the ground that respondent's incapacity had subsequently ended or diminished, and that the director of labor make such order in the premises as the justice of the case may require.

At the hearing before the director of labor the petitioner offered to introduce evidence in support of the above allegations. The director of labor, on objection by respondent, ruled that petitioner was in technical default in payments

of compensation called for by the terms of the preliminary agreement, and that it was not entitled to be heard on its petition without first paying or tendering the amount due the respondent thereunder up to June 3, 1941, when respondent suffered a second disabling injury for which he was receiving compensation. A written decision to that effect was rendered later by the director of labor, relying upon the provisions of the act as construed in *Carpenter* v. *Globe Indemnity Co.*, 65 R. I. 194, *Gobeille* v. *Ray's, Inc.*, 65 R. I. 207, and *Hingeco Mfg. Co., Inc.* v. *Haglund*, 65 R. I. 218. From that decision the petitioner appealed to the superior court.

At the hearing in that court testimony was introduced tending to support certain of the allegations in the petition for review. Testimony was then offered in support of other allegations concerning the cessation of respondent's physical disability. On respondent's objection, it appeared to the court and to counsel for each party that the admissibility of such evidence, as indeed the decision of the cause, depended upon the answer to a serious question of law. Therefore, upon motion of the petitioner, two questions of doubt and importance were certified to this court for determination in accordance with G. L. 1938, chap. 545, § 5.

These questions read: "I. Where an employee receiving compensation under the Workmen's Compensation Act voluntarily returns to work with the employer from whom he has been receiving compensation, and earns wages equal to or greater than his average weekly wages at the time of the injury, but where no final agreement has been filed, is the employer obliged to continue making the payments of compensation while the employee is so employed or until a final agreement is filed? II. Where an employee receiving compensation under the Workmen's Compensation Act voluntarily returns to work with the employer from whom he has been receiving compensation and earns wages equal to or greater than his average weekly wages at the time of the injury, but no final agreement has been filed, must the em-

ployer, before being permitted to proceed with a petition for review of the preliminary agreement, pay to the employee the compensation fixed in the preliminary agreement for the period during which the employee has been working for the employer for wages equal to or greater than his average weekly wages at the time of the injury?"

At the hearing before us it appeared that the first of these questions was too broad and did not so affect the merits of the controversy presently involved in this cause as to justify certification and to require our answer at this time. Our consideration therefore will be confined to the second question.

The petitioner concedes that the above-mentioned cases relied upon by the director of labor in his decision were correctly decided; but it contends that there is a factual distinction between those cases and the one at bar, in that in each of those cases "no payments either of compensation or wages were being made to the employee under a preliminary agreement during a time when the right of the employer to a modification or termination of the compensation payments was still undetermined"; whereas in the case at bar "payments, either of wages or compensation, have been made to the employee from the date of the injuries and such payments are still being made." It also contends that the act does not contemplate payments at the same time of both compensation and wages equal to or greater than the average earnings of the employee at the time of the accident, since the object is merely compensation and not profit to an employee; and that none of the decisions in the above-mentioned cases requires a ruling in principle that an employer, while in default under an approved preliminary agreement, has not the right to have the director of labor hear its petition to review such agreement.

The respondent contends that the instant cause is governed in principle by the rulings in the above-mentioned cases and that the director of labor was correct in deciding that this employer, who was in default under the preliminary

agreement for compensation, which was duly approved and was never modified thereafter under the act, was not entitled as of right to be heard on a petition to review that agreement, so long as such default continued.

In our opinion the matter here, being merely a certification of a question of law of doubt and importance and not a certification of the entire cause, must be approached from the viewpoint of the legislature's policy as found in the requirements of the act, rather than from any consideration of particular facts and equitable principles as if the transaction were merely between individuals and were not governed by the act. Upon such view we find that the legislature definitely required that all compensation agreements, whether preliminary, supplemental, or final, must be approved by the director of labor in order to have the status of effective compensation agreements under the act. Nowhere in the act do we find any compensation agreement provided for which, directly or indirectly, dispenses with the necessity of the director of labor's approval.

Accordingly we have held, in substance and effect, that a compensation agreement, as contemplated by the act, is not a simple contract between individuals and cannot be considered as such; but that such an agreement under the act requires the solemnity and formality of approval by the director of labor as the representative of the state, and that it must be so treated. *Carpenter* v. *Globe Indemnity Co., supra.* We also have held that an agreement entered into by employer and employee and approved by the director of labor under the act has the force and effect of a decree of court; that until it is modified or terminated in accordance with the provisions of the act, it must be complied with and is enforceable as a decree; and that a party in default thereunder may not invoke and receive affirmative relief under the act. See *Carpenter* v. *Globe Indemnity Co., Gobeille* v. *Ray's, Inc.* and *Hingeco Mfg. Co., Inc.* v. *Haglund, supra.*

A corollary to these rulings, it seems to us, is that an agreement for compensation, or for wages in lieu thereof, that has

*not* been approved by the director of labor is not recognized by the act as a procedural substitute for an agreement for compensation that requires approval by the director of labor. If that be so, it follows that a party in default of an approved compensation agreement, which has not been modified or terminated in accordance with the provisions of the act, has not the right to invoke and receive affirmative relief by a petition for review, while such default continues. See *Hingeco Mfg. Co., Inc.* v. *Haglund, supra.*

These requirements may seem harsh, but in reality they were enacted to promote uniformity of decision and application by the director of labor, as well as to insure adequate protection to employer and employee alike in the administration of the act. We agree that the act contemplates compensation and not profit; but it also contemplates compliance with its terms as the salutary means of insuring that end. If any inequity might seem to result, where there has been a failure to comply with the terms of the act, it flows from such failure rather than from enforcement of the act.

After much consideration we think that a negative answer to the question, as urged by the petitioner, cannot be made unless a mere contract for wages between the individual parties, which has not been approved by the director of labor, is to be given the same effect and standing that the law expressly gives only to compensation agreements approved by the director of labor in accordance with the act. In our opinion such a view would lead to possible nullification of the express requirements of the act.

For the reasons stated, we are constrained to answer the second certified question in the affirmative. A further confirmation of this conclusion is found in an amendment to the act, namely, P. L. 1941, chap. 1064, which was approved May 7, 1941. Among other things, this statute permits an employer, upon the filing of a petition for review, to cease, for a reasonable time, payments of compensation; and provides for enlarged powers to the director of labor, upon hearing such a petition, in that he may "increase, diminish, or dis-

continue the compensation payment in accordance with the facts, or make such other order as the justice of the case may require."

The papers in the cause, with our decision certified thereon, are ordered to be sent back to the superior court for further proceedings.

Moss, J., dissenting. I am unable to concur in the foregoing opinion because, as I view the matter, the employer, upon the facts stated in the certified question answered in that opinion was not in default in the payment of unemployment compensation at the time when it filed with the director of labor its petition for a review of the preliminary agreement.

It should be noticed that no compensation, under art. II, § 12 of the workmen's compensation act, for any specific injury to the employee is involved in this cause, but only general unemployment compensation.

It should also be kept in mind in answering this certified question that, as stated in the opinion of the court, it was provided in P. L. 1941, chap. 1064, that on a petition for review, such as was filed in this cause, the director of labor may "make such other order as the justice of the case may require." That amendment to the workmen's compensation act went into effect before the filing of the employer's petition for review by which this cause was begun.

It is my conclusion that justice in the instant cause clearly requires that the employer should not be held to be in default, and therefore not entitled even to be heard on its petition for review, solely because, for the period while the employee was again in its employ and receiving wages at least equal to his former wages, it did not *also* pay him *unemployment* compensation.

As to the three cases reported in 65 R. I. and relied on, in the instant cause, by the director of labor in his decision and by the court in its opinion, I have not found any statement which in my judgment is inconsistent with my conclusion above expressed.

Indeed it seems to me that there is some support for this conclusion in the following language in the opinion in the *Hingeco* case at page 221: "One of the objects of the act is to protect an injured employee against the consequences that ordinarily follow an impairment or destruction of earning capacity by *substituting* the benefits which the act grants for the weekly wages that such employee would have earned but for his disability." (italics mine)

So also in the opinion in the *Carpenter* case it was stated, at page 196, that the main question was whether an agreement for compensation, entered into by the employer and the employee and approved by the director of labor in accordance with the act, might be terminated by the employer without filing with the director of labor, in accordance with the act, a petition for a review of the agreement on the ground that the employee's incapacity had ended. We held that it could not and on page 197 we said: "It does not appear from the evidence whether petitioner's employer was ready to reemploy him on December 6, 1937, at his regular employment and wages, nor does it appear whether any other employment was available to him."

I have not found any reported case in this state or elsewhere which seems to me to support the opinion of the court in the instant case. On the other hand this court in *Harvey* v. *Brown,* 56 R. I. 34, at page 37, said: "The fundamental principle of the Workmen's Compensation Act is that the benefits which it grants to an injured workman or to his dependents shall be a *substitute* for the weekly wages that the workman would have earned but for his disability or death resulting from an accident in the course of his employment. The object of this law is to provide weekly payments to the injured workman or to his dependents, irrespective of any question of negligence, as a protection against the consequences that ordinarily follow an impairment or destruction of earning power." (italics mine) See also *Weber* v. *American Silk Spinning Co.,* 38 R. I. 309, at 315.

In *Perkins's Case*, 278 Mass. 294, the facts are stated on page 295 as follows: "The employee received on December 18, 1928, an injury arising out of and in the course of his employment by a subscriber. He entered into an agreement in writing with the insurer which was duly approved by the Industrial Accident Board, wherein it was stated that his average weekly wage was $42 and the compensation due per week $18. He was paid that compensation weekly up to November 15, 1929, when it was reduced to $4.67 per week based on his earnings. He desired to secure a greater partial rate of compensation and alleged that his average weekly wages for a year previous to his injury were in excess of $42. He actually returned to work on September 12, 1929, and the insurer contended that there had been an overpayment."

At page 301, the court says: "The average weekly wage of the employee since his return to work in September, 1929, exceeded the average weekly wage at the time of his injury, as stated in the written memorandum of agreement approved by the department. Therefore, he was entitled to no payments since his return to work. He was in truth paid compensation by the insurer from his return to work until November 15, 1929, at the rate of $18 per week. The insurer contended that there had been this overpayment at the hearing before the board member, as stated in his report. It is manifest from what has already been decided that this was an overpayment."

The conclusion of the supreme judicial court is set forth on page 302 as follows: "Since it was apparent that the employee had received the overpayment already stated, and since the insurer had seasonably raised that question, manifest justice required that the overpayment ought to be returned." That case seems to me to strongly support the position of the petitioner in the instant cause.

In the New York case of *Matter of Sullivan* v. *Seely Son, Inc.*, 226 N. Y. App. Div. 629, the employer, after a disabling accidental injury suffered by the employee in the course of his employment, continued to pay him his full salary during

the period of his disablement. The State Industrial Board, on a petition by the employee, awarded him compensation at the rate of $25 per week during that period.

This decision was reversed on appeal, the court saying, at page 630, as to the award: "This would seem to pervert the purpose of the statute which is to compensate the injured workman for loss of earning power (*Matter of Marhoffer* v. *Marhoffer,* 220 N. Y. 543), and to protect him against destitution during the period of disability. 'The act was not intended as a source of profit to the employee or as a means of punishment of the employer ... '." At page 631 the court added: "Having freely consented to accept a substantial benefit from his employer, all equitable rules would hold the claimant estopped from recovering another sum not based on a loss arising during the term of disability."

In *Matter of Beach* v. *Travelers Ins. Co.,* 233 N. Y. App. Div. 55, at page 57, the same court says: "An employee is not entitled to compensation for the period during which he has received full wages, since he has suffered no loss of earnings." See also *Ulmer* v. *E. I. Du Pont De Nemours & Co.,* 190 So. 175 and *Sayre* v. *Textile Machine Works,* 129 Pa. Sup. Ct. 520.

After consideration of the pertinent language of the unemployment compensation act of Rhode Island, including the statement of the purposes of its enactment, and after consideration of the relevant cases in this state and elsewhere which have come to my attention, I am of the opinion that the certified question now before us should be answered in the negative.

BAKER, J. concurs in the opinion of Moss, J.

*Frederick W. O'Connell, Charles E. Tilley, Swan, Keeney & Smith,* for petitioner.

*Thomas H. Gardiner,* for respondent.