402 A.2d 575.

ANTHONY MARSHALL *vs.* KAISER ALUMINUM &
CHEMICAL CORPORATION.

LOUIS VOLLARO *vs.* KAISER ALUMINUM &
CHEMICAL CORPORATION.

GEORGE DUPONT *vs.* KAISER ALUMINUM &
CHEMICAL CORPORATION.

ARTHUR MERRITT *vs.* KAISER ALUMINUM &
CHEMICAL CORPORATION.

DOMENIC MARABELLO *vs.* KAISER ALUMINUM &
CHEMICAL CORPORATION.

FRANK F. SOUSA *vs.* KAISER ALUMINUM &
CHEMICAL CORPORATION.

HYPOLITO FERREIRA *vs.* KAISER ALUMINUM &
CHEMICAL CORPORATION.

JUNE 5, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J.   These are employees' petitions brought under G.L. 1956 (1968 Reenactment) §28-35-7 of the Workers' Compensation Act (the Act) to enforce preliminary agreements providing for payment of dependents' allowances on behalf of the employees' minor children by their employer, Kaiser Aluminum & Chemical Corporation (Kaiser). The *Marshall* petition has been consolidated for this appeal with six other similar petitions to enforce preliminary agreements under which Kaiser has ceased paying dependency benefits. The parties have agreed that our decision in the case of *Marshall* v. *Kaiser Aluminum & Chemical Corp.*, 121 R.I. 942, 397 A.2d 529 (1979) shall be determinative of all the cases. We shall therefore refer only to the facts of the *Marshall* case throughout this opinion.

Anthony Marshall, an employee of Kaiser, became totally disabled for work on August 23, 1971. He and Kaiser entered into a preliminary agreement under which Kaiser was to pay dependents' allowances of $6 per week per dependent in accordance with §28-33-17, as amended by P.L. 1974, ch.

271, §1. Kaiser made the payments from August 23, 1971, until November 1, 1976, when it became aware that one of the dependent children, Deborah Marshall, had reached 18 years of age 3 years before on December 14, 1973.

The petition to enforce was heard on an agreed statement of facts before a single commissioner who denied and dismissed it in a decree dated August 22, 1977, after finding that §28-33-17 of the Act allowed an employer unilaterally to suspend dependency payments made to a minor child of an employee receiving total disability benefits once that child has attained the age of 18. At the hearing before the trial commissioner the parties stipulated to the following facts: (1) Deborah attained the age of 18 years on December 14, 1973; (2) the employer unilaterally terminated the payment of the dependency allowance in the amount of $6 per week for Deborah's support on November 1, 1976; (3) the employer did not excecute a suspension agreement and receipt, or file a petition to review under §28-35-45, or file a notice of its intention to suspend benefits under §28-35-46.

The employee appealed to the full commission which entered a new decree on August 1, 1978, after an independent review of the record. That decree orderd the employer to pay dependency benefits on Deborah's behalf from December 6, 1976, the date on which payments ceased, until such time as a Workers' Compensation suspension agreement and receipt had been executed. The employer is before us on appeal from the decree of the full commission pursuant to §28-35-29, as amended by P.L. 1972, ch. 169, §29.

The sole issue raised on appeal from the consolidated petitions is whether under §28-33-17, as amended by P.L. 1974, ch. 271, §1, an employer may unilaterally suspend payment of dependents' benefits when the dependent child attains the age of 18 years without bringing a petition before the commission to obtain an order formally terminating benefits. Section 28-33-17 states in relevant part:

> "Where the employee has persons conclusively presumed to be dependent upon him or in fact so dependent upon him or in fact so dependent, the sum of six

dollars ($6.00) shall be added to the weekly compensation payable for total incapacity for each person wholly dependent on the employee, but in no case shall the aggregate of such amounts exceed eighty per cent (80%) of the average weekly wage of the employee. Such dependency allowance shall be in addition to the compensation benefits for total disability otherwise payable under the provisions of this section. For the purposes of this section the following persons shall be conclusively presumed to be wholly dependent for support upon an employee:

\* \* \*

\* \* \*

"(c) Children under the age of eighteen (18) years (or over said age but physically or mentally incapacitated from earning), if living with the employee at the time of his injury \* \* \*.

"In all other cases questions of dependency shall be determined in accordance with the fact as the fact may be at the time of the injury."

The employee asserts here, as he asserted before the full commission, that no benefits may be suspended under the Act without a formal ruling by the commission unless a specific statutory section provides for such a suspension. Since §28-33-17 does not specifically provide for unilateral termination benefits, he contends that the employer may suspend dependency benefits only by resorting to a procedure made available under the Act. In support of his argument the employee relies on a line of authority of which *Walker* v. *Kaiser Aluminum & Chemical Corp.*, 119 R.I. 581, 382 A.2d 173 (1978), is the most recent example.[1] In that case an

---

[1]*E.g., Raymond* v. *B.I.F. Indus., Inc.*, 112 R.I. 192, 308 A.2d 820 (1973); *Olbrys* v. *Chicago Bridge & Iron Co.*, 89 R.I. 187, 151 A.2d 684 (1959); *Frenier* v. *United Wire & Supply Corp.*, 83 R.I. 472, 119 A.2d 724 (1956); *Lichtenstein* v. *Parness*, 81 R.I. 135, 99 A.2d 3 (1953); *Brown & Sharpe Mfg. Co.* v. *Giacoppa*, 69 R.I. 378, 33 A.2d 419 (1943); *Carpenter* v. *Globe Indem. Co.*, 65 R.I. 194, 14 A.2d 235 (1940); *Gobeille* v. *Ray's, Inc.*, 65 R.I. 207, 14 A.2d 241 (1940); *Hingeco Mfg. Co.* v. *Haglund*, 65 R.I. 218, 14 A.2d 233 (1940); 3 Larson, *Workmen's Compensation Law* §82.60 at 15-570 (1952); Annot., 129 A.L.R. 418 (1940).

employer unilaterally terminated disability payments to an employee upon his returning to work at a salary greater than the salary he had been receiving before he was injured. We held that disability payments could be suspended only by a formal ruling of the commission, not by the employer's unilateral act; and that payments would otherwise continue until a suspension agreement and receipt had been executed. Although the effect of our holding in *Walker* was that the employee received compensation for the period during which he also received full wages, that inequity flowed not from our enforcement of the Act, but from the employer's failure to comply with the Act.[2]

We are of the opinion that *Walker* and the line of authority which it represents are distinguishable from the facts of the instant case, where dependency, not disability, payments are involved. In *Walker* and similar cases, the employer was under a continuing obligation under an approved preliminary agreement to pay partial or total disability benefits to the employee until modified or terminated under the Act. *See Lichtenstein* v. *Parness*, 81 R.I. 135, 138, 99 A.2d 3, 4 (1953). The duration of the disability was unknown. Since the length of time during which payments were to be made was not apparent from the decree, as a matter of policy we declined to construe the Act as placing the procedural burden of filing a petition to challenge the employer's unilateral action on the employee. Our reasons for construing the Act in this manner have been articulated in a number of prior cases.

We have stated that the onus is properly placed upon the employer when there is a possibility that the employee may suffer hardship due to the failure to provide compensation. *Roy* v. *Providence Metalizing Co.*, 119 R.I. 630, 381 A.2d 1051 (1978)). When any hardship could easily be obviated by

---

[2]The Act has been amended since our decision was rendered in *Walker* v. *Kaiser Aluminum & Chemical Corp.*, 119 R.I. 581, 382 A.2d 173 (1978), to prevent such an inequity from occurring again. G.L. 1956 (1968 Reenactment) §§28-33-17.1 and 28-33-18.1 now provide a credit to an employer for compensation paid to an employee during any period in which he was also gainfully employed.

the employer's invoking the procedure outlined in §28-35-46, we would not visit an additional procedural burden on the employee not contemplated by the framers of the Act by requiring him to seek a ruling of the commission concerning the validity of the employer's unilateral determination on the extent of its obligation. *Plouffe* v. *Taft-Peirce Manufacturing Co.*, 91 R.I. 221, 162 A.2d 557 (1960).

We stated in *Hingeco Manufacturing Co.* v. *Haglund*, 65 R.I. 218, 223, 14 A.2d 233, 235 that:

> "An employee is ordinarily dependent upon the weekly wages for his livelihood. A disabling injury through accident arising out of and in the course of employment deprives him of this income and ordinarily makes him greatly dependent upon whatever compensation he is entitled to receive under the act. If an employer, purely on its own judgment, can default in the payment of compensation to an injured employee and, while so in default, can invoke and receive affirmative assistance to his own advantage, then the object of the act will be substantially defeated. This is unjust to the injured employee, whom the act primarily intends to protect."

We have therefore ruled that an employer may not unilaterally terminate payments to an employee even when the employee recovers damages from a third party for malpractice in the treatment of his injury, *Roy* v. *Providence Metalizing Co., supra;* where an employee voluntarily returns to work at reduced wages, *Raymond* v. *B.I.F. Industries, Inc.,* 112 R.I. 192, 308 A.2d 820 (1973); or where an employee returns to work at equal or greater wages, *Walker, supra; Lichtenstein* v. *Parness, supra; Brown & Sharpe Manufacturing Co.* v. *Giacoppa,* 69 R.I. 378, 33 A.2d 419 (1943); where the doctor's report acquired by the employer indicates that the employee is no longer disabled, *Carpenter* v. *Globe Indemnity Co.,* 65 R.I. 194, 14 A.2d 235 (1940); or where the employee refuses to submit to a physical examination, *Hingeco Manufacturing Co.* v. *Haglund, supra.*

On the other hand, the policy of fairness to the employee which we endeavored to apply to our construction of the Act in the foregoing decisions is not furthered by requiring a formal order of the commission to terminate fixed payments to dependents made over a definite period of time. That obligation is not a continuing one. We have held in *Plouffe, supra,* that when the extent and duration of payments is apparent from the agreement, such an agreement expires by force of its own terms, and payments thereunder may cease without any need to request a prior ruling by the commission.

In *Plouffe,* cited with approval in *Ludovici v. American Screw Co.,* 99 R.I. 747, 210 A.2d 648 (1965), the employer unilaterally discontinued payments made pursuant to G.L. 1938, ch. 300, art. II, §11, now §28-33-18, which provided a limit on partial disability payments to be made to employees:

> "[I]n no case shall the period covered by such compensation be greater than 700 weeks from the date of the injury."

This ceiling on the duration of partial disability payments was eliminated from the Act by P.L. 1969, ch. 146, §1. The amendment, however, in no way affects the principle of law enunciated by *Plouffe,* contrary to the employee's argument. We held in *Plouffe* that the employee could unilaterally determine when to discontinue payments when the number of weeks they were to be made was subject to objective determination:

> "This language, which has been repeated in the amendment extending the period for 800 weeks, is clear and unequivocal. It places a numerical limitation on the number of weeks in which an employee is entitled to benefits, which number being calculable from the date of the injury is subject to objective determination by the employer or the employee. It follows that by force of the provision itself any obligation imposed on an employer by virtue of this section ceases and determines upon the expiration of the stated period without regard to any action of the parties, and consequently resort to the

commission for affirmative relief is not *mandatory*. As was done in the instant case, the employer may unilaterally determine that the statutory maximum period has expired and accordingly terminate payments. However, in doing so he must be prepared to establish this fact before the commission in the event of a contrary claim being pressed by the employee." 91 R.I. at 224, 162 A.2d at 559.

We believe that in the instant case the obligation to pay dependency benefits bears a closer resemblance to the ascertainable payments in *Plouffe* than to the indeterminate payments in *Walker*. Section 28-33-17 when read as a whole implies that dependency benefits shall be suspended when the employee's child attains the age of 18, the age at which the child is no longer conclusively presumed to be dependent, unless he is incapable of self-support by reason of mental or physical disability. Such benefits are to be paid in respect to the minor child from the date for commencement of payments set forth in the agreement until the date the child turns 18. This time period is subject to an objective determination in contrast to disability payments which are to be made for the "duration of total incapacity."

In almost every jurisdiction the statutory presumption of dependency of children terminates upon their reaching a specific age. 2 Larson, *Workmen's Compensation Law* §62.30 at 11-47 to -48 (1952). After that, dependency must be established factually if benefits are to continue. *Id.* at 11-48. When the basis of the payments is the child's presumed condition of dependency, if the dependency shall cease, the payments shall cease, even though no statutory provision specifically provides for cutting off benefits at age 18. *Canavan's Case*, 331 Mass. 444, 120 N.E. 2d 206 (1954).

An earlier form of the Rhode Island statute, P.L. 1911-12, ch. 831, art. II, §7, which is similar to the present version under consideration, has been construed by at least one court, together with similar legislation, to indicate a somewhat common intention to shut off compensation to minor

dependents when they reach the age of 18 and are capable of earning wages. *Taylor* v. *Sulzberger & Sons*, 98 Kan. 169, 157 P. 435 (1916). In addition, statutory provisions similar to ours have been construed to terminate dependency benefits at age 18, although not specifically providing for any such termination. *Canavan's Case, supra; Franklin* v. *Jackson*, 231 Miss. 497, 95 So. 2d 794 (1957); *Hewett* v. *Garrett*, 274 N.C. 356, 163 S.E. 2d 372 (1968); *see Aylesworth* v. *Middletown State Hospital*, 16 A.D. 2d 1000, 229 N.Y.S. 2d 647 (1962).

The purpose behind the payment of dependency benefits to a totally disabled employee, as noted by the trial commissioner, is to assist the employee in his legal duty to support those of his children who are minors or who are unable to maintain themselves and likely to become public charges. *See* G.L. 1956 (1969 Reenactment) §§15-11-5 to -7; *Belcher* v. *Vulcan Materials Co.*, 359 So. 2d 383 (Ala. Civ. App.) *cert. denied*, 359 So. 2d 386 (Ala. 1978). Once the children are no longer dependent, this purpose is accomplished and payments should accordingly be terminated. On the other hand, a construction of the Act as authorizing dependency payments to continue indefinitely, rather than terminating at age 18, would produce the incongruous result that such payments would go to individuals who no longer qualify as dependents solely on the formalistic basis that only the commission may end any and all payments under the Act.

Terminating dependency payments at age 18 is nevertheless consistent with our policy of fairness to the employees. Parents who believe that their children still qualify for dependency benefits after attaining the age of 18 are not precluded from filing a petition for a continuation of those benefits, even though they are no longer aided by an irrebuttable presumption of dependency.[3]

We conclude that an employee receiving total disability benefits whose minor child is presumed to be dependent

---

[3]There is no suggestion in the stipulated facts of this case that the child, Deborah Marshall, is physically or mentally incapacitated in any way.

under §28-33-17 must file a petition upon the child's reaching 18 years in the event that he claims continued dependency benefits for that child. He furthermore must bear the burden of establishing a present dependency in order to show entitlement to uninterrupted dependency benefits.[4] It is more appropriate to place the burden of bringing a petition to continue dependency benefits on the relatively small percentage of employees whose dependent children shall remain dependent upon turning 18, rather than to require a far greater number of employers to bring petitions to end dependency payments in every case in which a dependent reaches the age of majority.[5]

The employer's appeals are sustained, the decrees of the full commission are reversed, and the cases are remanded to the Workers' Compensation Commission for proceedings consistent with this opinion.

*Lovett & Linder, Ltd., Raul L. Lovett, Lauren Jones,* for petitioners.

*Quinn, Cuzzone & Geremia, Bruce Q. Morin,* for respondent.

---

[4]We reverse to a later date the question of whether the employee must bring a petition to prove his child's entitlement to a continuation of dependency benefits where the employer has actual notice of the continuing dependency.

[5]A 1975 health interview survey conducted by Rhode Island Health Services Research, Inc. (SEARCH) indicates that in Rhode Island only 1.6% of young people under the age of 25 years report that health problems interfere a "great deal" with their usual work or activity. 2.6% reported "some" interference, 2.2% "only a little," and 93.5% reported that health problems did not interfere at all with their usual work or activity. SEARCH *Health Interview Survey,* series 4, number 1, table 38 at 64.