YELLOW CAB COMPANY *et al. vs.* PUBLIC UTILITY
HEARING BOARD.

CITY CAB COMPANY *et al. vs.* SAME.

MARY E. D'AMBRA *et al. vs.* SAME.

JULY 25, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

218

BAKER, J. These are appeals brought to this court under the provisions of sec. 125, chapter 660, public laws 1939, as amended by section 1, chap. 821, P. L. 1940, from a decision and orders of the public utility hearing board, hereinafter called the board. The three cases were heard together.

The decision and orders in question granted to City Cab Company, Mount Pleasant Cab Co., and William Mambro d. b. a. Majestic Cabs, hereinafter referred to as the applicants, certificates of convenience and necessity to operate nineteen, twenty and eleven taxicabs respectively within the city of Providence in this state. A certain condition, which will later be more fully discussed, was attached by the board to the granting of the applicants' requests for the issuance of such certificates. The applicants' appeal is based on their contention that they should have been granted the certificates without the imposition of the above-mentioned condition.

The appellants, Yellow Cab Company, Monahan Cab Company and a number of individuals doing business as the Independent Taxi Owners Association, hereinafter referred to as the objectors, contested before the board the right of the applicants to obtain the certificates of convenience and necessity which were granted, and they have appealed that decision.

We will consider first the appeals of the objectors. In substance these are based on the grounds that the orders of the board are unlawful and unreasonable because they are against the law and the evidence and the weight thereof. The record shows that the applicants' petition for certificates of convenience and necessity came before the board

on appeal from a decision of the public utility administrator, hereinafter designated as the administrator. It also appears that when these appeals were heard before the board an assistant attorney general, representing the administrator, offered in evidence the transcript of the testimony taken at the hearings before him. The board, over the protest of the objectors, admitted in evidence such transcript and it was thereupon read to the board. The objectors argue that the admission of the transcript in the above manner was unlawful and was so prejudicial to them that the orders of the board should be reversed.

The pertinent statute contains provisions which in our judgment are material to the decision of the question now before us. Section 1, chap. 821, P. L. 1940, amending sec. 125, chap. 660, P. L. 1939, reads in part as follows: "Upon an appeal being taken from any such decision or order (of the public utility administrator), the public utility hearing board shall hold and conduct hearings thereon to be governed by rules to be adopted by said board, and in such hearings the board shall not be bound by technical rules of evidence. Said board shall sit as an impartial, independent body in order to make decisions affecting the public interest and private rights. It shall hear all appeals de novo as to both the law and the facts and its decisions shall be based upon the law and upon the evidence presented before it by the public utility administrator and by the parties in interest."

It is the contention of the objectors that the statute provides that the board is to hear all appeals *de novo,* and that this was not done when the transcript of a previous hearing was put in evidence *in toto* and then read to the board. It appears, however, that the same parties were before the board as were earlier before the administrator, where they had full opportunity to examine and cross-examine the witnesses then offered, the same issues being raised at both hearings. There was nothing to prevent any of the parties from calling as witnesses before the board persons who had testi-

fied before the administrator and in fact in several instances this was done.

Upon consideration, and in view of the above circumstances, we are of the opinion that the statute was complied with and that the parties received a hearing *de novo* by the board within the contemplation of the statute. The contents of the transcript, as far as the board was concerned, was entirely new matter. The objection to the introduction in evidence of the transcript went more to its weight and probative value than to its admissibility. The mere admission of the transcript did not involve a consideration by the board of the appeal before it otherwise than as a proceeding *de novo*. If the board accepted the findings of the administrator without considering the evidence, that would be contrary to the statute; but mere consideration of the evidence which was introduced before the administrator and without reference to his findings is not such contrary action. It seems to us that the construction placed by the objectors on the words "de novo" as used in the statute is too narrow.

As supporting the view that the term *de novo* as used here should not be considered as narrowly as the objectors urge, it may be noted that the statute itself specifically provided that in the conduct of this hearing the board should.be governed by rules which it adopted and should not be bound by the technical rules of evidence. Also the statute clearly contemplated that the administrator should have the right to present evidence before the board, and it was not specified that such evidence should be submitted in any particular manner or form.

We do not believe, as is argued by the objectors, that the statute should be considered so narrowly as to limit the presentation of evidence before the board to the testimony of the administrator himself; nor can we accept as sound their claim that the appeal to the board is like a probate appeal to the. superior court. The provisions of the statute here are different and constitute an independent special statute on appeal. We find therefore that, in the facts and circum-

stances as they appear here, the action of the board in admitting in evidence, at the instance of the administrator, and in considering the transcript of testimony taken before him was itself neither unlawful nor prejudicial to the rights of the objectors; and the board did not exceed its jurisdiction in so acting.

■ The objectors Yellow Cab Company and Monahan Cab Company next contend in substance that the decision and orders of the board are against the evidence and are unlawful and unreasonable, because public convenience and necessity do not require the granting of certificates to operate fifty taxicabs in Providence. The law in this state is well settled, and it is not disputed by the parties that public service is the test in granting a certificate of convenience and necessity. *Capaldo* v. *Public Utility Hearing Board,* 71 R. I. 245. Further, in considering the appeals now before us the pertinent statute contains certain provisions which regulate our conduct. Section 1, chap. 821, P. L. 1940, contains the following language: "On any such appeal (to the supreme court) the findings of the board on questions of fact shall be held prima facie to be true and as found by the board; and an order of the board shall not be reversed unless it appears that the decision of the board was against the weight of the evidence presented before the board, or that said order was entered without the jurisdiction of the board, or that such order is unlawful or unreasonable."

In its decision the board found that the taxicab service now offered in Providence was not sufficient and adequate, and that general public welfare called for additional and better service. The evidence before the board showed that the Yellow Cab Company was then holding, and had held for some years, 278 certificates of convenience and necessity for taxicabs, but had never registered and operated more than 101 taxicabs, which was the number in use by it at the time of the hearing. For some years prior to 1946 the number was considerably less. The Monahan Cab Company

operated five taxicabs at the time of the hearing and the Independent Taxi Owners Association eleven such cabs.

The applicants had fifty cars operating under public or "P" plates, so called. These cars are defined as motor vehicles for hire, and are regulated by the provisions of G. L. 1938, chap. 86, §§1 and 8, and chap. 98, §3. They do not require certificates of convenience and necessity for use and do not come under the jurisdiction and control of the administrator or the board as do taxicabs. These are the cars for which the applicants sought certificates of convenience and necessity so that they might be operated as taxicabs which would be under the regulation and control of the administrator. The distinction between such public service cars and taxicabs is discussed in *Broadway Auto Livery* v. *State Board of Public Roads,* 52 R. I. 109.

The evidence also tended to show that there were probably about two hundred such public service cars being operated in Providence, but that the fifty controlled by applicants were the only ones organized and being operated as units. In addition to the testimony taken before the administrator a substantial amount of evidence was introduced before the board with the result that the record herein is voluminous. A large number of exhibits comprising letters from patrons, reports, records, results of investigations, statistical computations and the like were also submitted. The parties presented numerous witnesses, some interested and some disinterested. These included officials of the different companies, starters, dispatchers, drivers of taxicabs and of the applicants' cars, doormen, porters, clerks and managers of hotels, businessmen and businesswomen, persons connected with schools, and a traffic engineer or expert, so called.

It would be needless and practically impossible to attempt to review here in any detail the testimony given by these witnesses. The evidence submitted to the board was in certain particulars highly conflicting and irreconcilable. It is plain from the board's decision that it took into account the fact that during the war, owing to the existence of re-

strictive regulations and unusual conditions, taxicab service was inadequate. However, at the time of and for some time prior to the hearing, these regulations were no longer operative and the decision was based on a consideration of all the evidence.

As bearing on the main issues of adequacy of service by the objectors and the propriety of issuing certificates of convenience and necessity to the applicants, the board pointed out several matters appearing in evidence. In substance these were that in the first four months of 1946 the Yellow Cab Company was apparently doing considerably more business than in the like months of 1945; that new cabs put in service by that company had seats for only three passengers whereas the older cabs held five persons; that many prospective passengers, who therefore had to be refused accommodation, hailed the applicants' drivers in the streets of Providence; and that an examination of statistics in evidence showed that even with fifty more taxicabs in service Providence would not, generally speaking, have more taxicabs per population than the average city of its approximate size, especially when its immediate suburbs were taken into consideration. The board also took into account the testimony of the traffic expert produced by the Yellow Cab Company and in the main accepted his views, but felt that there were certain local conditions with which he was not familiar and which, in its judgment, affected the situation. In addition the board realized the existence of a considerable number of cars with public service plates, so called, and suggested more stringent legislative action in that connection.

In the language of the statute the findings of the board on questions of fact are to be held *prima facie* to be true, and an order of the board is not to be revoked unless it appears that its decision is against the weight of the evidence, or that the order is without the jurisdiction of the board, or is unlawful or unreasonable. We have considered the evidence and the exhibits herein and have applied the tests set out in the statute and find that we cannot say that the

part of the decision of the board, which is attacked by the objectors Yellow Cab Company and Monahan Cab Company, is against the weight of the evidence, or that the orders entered are without the jurisdiction of the board, or are unlawful or unreasonable.

They are, however, also contending that a utility should be protected from ruinous competition when it is rendering adequate service, and that the investment of the existing taxicab companies must be given consideration over the investment of a company seeking to enter the field. We do not deem it necessary to discuss the first point raised as the board found that Providence was not receiving adequate taxicab service, and we have declined to hold that such finding of fact was against the weight of the evidence or was otherwise improper. As to the second point this court in *Breen* v. *Division of Public Utilities,* 59 R. I. 134, 135, quoted with approval from 3 Pond, Public Utilities (4th ed.) §746, as follows: "Protecting existing investments, however, from even wasteful competition must be treated as secondary to the first and most fundamental obligation of securing adequate service for the public . . . ." In the instant cause consideration was given to the investments of the existing taxicab companies, but it was found that under prevailing conditions they were not able to give the public adequate service.

The said objectors finally urge that if the board should decide, as it has, that the taxicab service in Providence is inadequate, then they should be given an opportunity to put more cabs in service, especially as the Yellow Cab Company has a large number of unused certificates of convenience and necessity. Upon consideration we are of the opinion that the objectors are not entitled to demand that, as a matter of law, they be given this opportunity. We find no authority which in this connection goes to the extent contended for by the objectors. Most of the cases cited by them, wherein an opportunity to improve service has been given a utility, involve instances where the utility is oper-

ating under a charter or a franchise, where it has a fixed route or territory to cover, and where the new utility would become a direct competitor in such route or territory. Cases of this type usually concern regular bus lines, steam and electric railroads and the like. Examples are *Seaboard Air Line Ry. Co.* v. *Wells,* 100 Fla. 1027; *Chicago Rys. Co.* v. *Commerce Comm'n.,* 336 Ill. 51; *Choate* v. *Commerce Comm'n.,* 309 Ill. 248. The objectors have also called our attention to two proceedings involving taxicabs, one in Baltimore, Maryland, and the other in Philadelphia, Pennsylvania. These involve special circumstances and are decisions of the respective public utility commissions in those states, but since they are not the holding of any court they lack authoritative force.

On the question under consideration the applicants point out that, although it has ample certificates of convenience and necessity, the Yellow Cab Company has not intimated that it intends to put any additional cabs into service unless specifically ordered to do so. The applicants have also referred to the case of *Hall's Motor Transit Co.* v. *Pennsylvania Public Utility Comm'n.,* 150 Pa. Super. 60. This case involved competing motor freight carriers, one of which improved its service when the other filed an application for extending and enlarging its certificate of public convenience. At page 65 the court quoted with approval from the decision of the public utility commission as follows: "Consideration cannot be given to a carrier who has not been giving the public service to which it is reasonabl(y) entitled, until another enterprising carrier seeks to render competitive service in the manner demanded by the shipping public." And the court finally stated: "Nor do we find any merit in the argument that the Commission was bound to order Hall's to increase or improve its service rather than permit a competing carrier to enter the field." See also *Davidson Transfer & Storage Co.* v. *United States,* 42 Fed. Supp. 215; *Alko Express Lines* v. *Pennsylvania Public Utility Comm'n.,* 152 Pa. Super. 27.

In our judgment a taxicab company does not stand in as strong a position on this issue as a utility operating under a charter or a franchise. The cab company here has neither. Of course its investment should be given some consideration, but it should not be controlling as such a company, in the absence of a franchise, is not by law entitled to a monopoly or to be protected from reasonable competition in its field of transportation. We believe that the board recognized and gave effect to these principles and, in the circumstances appearing in this cause, we find nothing unlawful or unreasonable in its orders relating to these matters.

The applicants' appeal relates to the conditions attached by the board to its orders that such applicants "will not directly or indirectly while possessing the certificates so granted own or operate, directly or indirectly, any additional automobiles as motor vehicles for hire as the same are defined in Sec. 1 of Chap. 86 of the General Laws of Rhode Island 1938". The additional automobiles thus referred to are those operated under public service plates so called. The applicants question the right of the board to attach any condition to its orders relating to the granting of certificates of public convenience and necessity. We believe that in the circumstances here the board had the right to attach reasonable conditions. While it is true that it has no jurisdiction over the issuing of public service plates, it has authority to approve or disapprove the issuance of certificates of convenience and necessity to operate taxicabs.

We have considered the condition imposed upon the granting of certificates in the instant cause and have concluded that it is too broad and therefore unreasonable. It appears from the testimony that the Yellow Cab Company, in addition to the 101 certificates of convenience and necessity actually being used for taxicab service, also has six automobiles with public service plates. These are operated by employees of that company and are used not for taxicab service but for weddings, funerals, long trips out of Provi-

dence, charter parties and for similar occasions. It is our judgment that if such public service plates are authorized for the Yellow Cab Company, the applicants collectively should be afforded some reasonable parity of treatment in this respect and should be permitted, if they desire, to operate, by their employees, a limited number of automobiles with such plates. The purpose of this is not to authorize their operation as taxicabs in violation of law, but is merely to enable the applicants to provide such incidental and special transportation service, above indicated, as the Yellow Cab Company is now authorized to provide with their public service cars.

But the objectors contend that the evidence shows past violations of law by operators of the applicants' public service automobiles, and that any permission to the applicants to operate public service automobiles in connection with their taxicab service would result in their unlawful operation as taxicabs and in unfair competition. In our opinion the evidence shows violations of the law in the past by operators of the applicants' cars but at a time when they were lessees thereof and not employees under the control of the applicants. However, if authority is granted to the applicants to operate, in connection with their taxicab service, a limited number of public service automobiles to provide the same kind and character of service as is given by those public service cars now operated by the Yellow Cab Company, such automobiles will be operated not by lessees but by employees of the applicants, who will be responsible for such operation. We ought not to presume, as objectors contend, that the applicants, when and if such authority is granted to them, will themselves violate or permit violations of G. L. 1938, chap. 100, §9, or any other relevant provisions of law. If violations by the applicants of such provisions take place, the law provides an appropriate remedy by way of revocation of authority to operate.

As we are here acting merely in an appellate capacity, it is our opinion that the number of such public service

automobiles, which the applicants collectively should be allowed to use in connection with their taxicab service, and the manner in which these cars should be allocated to the applicants should be determined in the first instance by the administrator who can hear the parties and receive evidence if necessary.

The appeals of the Yellow Cab Company, the Monahan Cab Company and the Independent Taxi Owners Association are denied and dismissed. The appeal of City Cab Company, Mount Pleasant Cab Co. and William Mambro is sustained in part, and the cause is remanded to the public utility administrator for a finding by him on the point above referred to.

Moss, J., did not participate in the decision.

*Edwards & Angell, William C. Waring, Jr., James E. Flannery,* for Yellow Cab Company and Monahan Taxi Co.

*Walter J. Hennessey,* for City Cab Company, Mount Pleasant Cab Co., and William Mambro, *d.b.a.* Majestic Cabs.

*James H. Hagan, Joseph L. Breen,* for Mary E. D'Ambra *et al., d.b.a.* Independent Taxi Owners Association.

*John H. Nolan,* Attorney General, *John F. O'Connell,* for State.