DECISION
Before this Court is East Providence Cab Co., Inc.'s ("appellant") appeal from the Rhode Island Division of Public Utilities and Carriers' (PUC or agency) Report and Order, finding that the appellant committed six violations of its certificate of necessity and imposing $3,000 in fines, one year of probation, and a record reporting requirement. This Court has jurisdiction pursuant to G.L. 1956 § 45-35-15.
 Facts and Travel
The appellant and its part owner, Donald Sousa (Sousa), possess a certificate of necessity MC-T-211 to operate a cab company with twelve cabs for the territory of East Providence. The appellant has operated in that city for approximately twenty years.
On August 25, 2000, Paul Desrosiers (Desrosiers)[1] filed the first of several complaints with the PUC, alleging that he had observed the appellant picking up passengers in Providence, outside its East Providence territory. Another complaint containing the same allegations against the appellant was filed on October 19, 2000. David Brooks, Compliance Officer for the PUC (Brooks), informed the appellant of the complaints and ordered the appellant on October 20, 2000 to "cease and desist from picking up passengers outside their territory listed on their certificate." (Tr. at 32.)
Desrosiers filed additional complaints against the appellant on October 26, 2000, prompting Brooks, on January 12, 2001, to visit the appellant's place of business where he viewed the appellant's taxi logs. Brooks noted from the logs that the appellant's taxis had picked up and discharged passengers outside East Providence on several occasions, in addition to those alleged in Desrosiers' complaints. On January 10, 2001, the appellant accepted seven passenger fares that originated in Providence and ended in Providence. (Tr. at 34-40.) Additional complaints were made against the appellant on February 14, 2001 and March 2, 2001, alleging the same violations of G.L. § 39-14-3.
A hearing was held on March 21, 2001 before Hearing Officer Bruce Stevenson. The purpose of the hearing was to determine whether the appellant had picked up and discharged passengers outside its territory in violation of G.L. § 39-14-3. On May 8, 2001, Hearing Officer Stevenson issued an order finding that the PUC presented sufficient evidence to support six of the seven charges brought against the appellant. Brooks's findings during the investigation of the appellant's business, as well as Sousa's admission at the hearing "that he picked up outside his territory and continued to do so after he received a Cease and Desist letter from the Motor Carrier Section," served as the basis for this determination. (PUC Report and Order 16595 at 2 (May 8, 2001)). The Order further required the appellant to pay $3,000 in fines, serve one year of probation, and submit weekly business logs to the PUC.
The appellant received a stay of the Order while it pursued its appeal to the Superior Court, which was timely filed on May 23, 2001. The appellant alleges that it was operating its business in compliance with G.L. § 39-14-3 and with the terms of its certificate of necessity; that the Hearing Officer's ruling was a misapplication of G.L. §§39-14-3 and 39-14-11; that those sections are unconstitutionally vague and confusing; and that under the doctrine of equitable estoppel, PUC is estopped from finding that the appellant violated the law.
 Standard of Review
General Laws § 45-24-69(D), which directs this Court in its review of a decision of the PUC on appeal, provides:
 "(D) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions; (2) In excess of the authority granted to the agency by statute or ordinance; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Superior Court reviews the decisions of the PUC under the "traditional judicial review" standard applicable to administrative agency actions. E. Grossman Sons, Inc. v. Rocha, 118 R.I. 276, 285,373 A.2d 496, 501 (1977). This Court must determine, upon review of the record that substantial evidence exists to support the PUC's decision.Salve Regina College v. Zoning Bd. of Review, 594 A.2d 878, 880 (R.I. 1991). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla, but less than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 824-5 (R.I. 1978)). Furthermore, this Court cannot substitute its judgment for that of the PUC, but must uphold a decision supported by substantial evidence contained in the record. Mendonsa v.Corey, 495 A.2d 257 (R.I. 1985); See also Lett v. Caromile, 510 A.2d 958, 960 (R.I. 1986) (cited by Restivo v. Lynch, 707 A.2d 663, 665-6 (1998)) (agency's decision must be upheld if the record contains "any competent evidence," and the trial justice "lacks authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute his or her findings of fact for those made at the administrative level").
 Statutory Interpretation
Title 39, Chapter 14 empowers the PUC to promulgate such rules and regulations as it deems proper to assure adequate, economical, safe, and efficient service by common carriers. General Laws section 39-14-3 and the appellant's certificate govern the operation of taxicab service in Rhode Island. That section states that:
 No person, association, or corporation shall operate a taxicab or taxicabs or a limited public motor vehicle or vehicles in any city or town in the state until such person, association, or corporation shall have obtained a certificate from the division certifying that public convenience and necessity require the operation of a taxicab or taxicabs or a limited public motor vehicle or vehicles for transportation of passengers, the acceptance or solicitation of which originate only within the territory specified in the certificate.
(emphasis added). The appellant argues that the language in the statute about solicitation and/or acceptance of solicitation within its East Providence territory, which is mirrored in its certificate, should be interpreted to mean that as long as a transportation request taken over the telephone is received and accepted in East Providence, the company's taking that fare does not violate § 39-14-3 or the certificate. Pursuant to this interpretation, the appellant argues that it was operating its business in compliance with G.L. § 39-14-3 and with the terms of the certificate of necessity and that the PUC's ruling was a misapplication of G.L. § 39-14-3.
It is a well-recognized doctrine that deference is accorded to an administrative agency when it interprets a statute the administration and enforcement of which has been entrusted to the agency. Pawtucket PowerAssociates Limited Partnership, et al. v. City of Pawtucket, 622 A.2d 452, 456 (R.I. 1993) (citations omitted.) Furthermore, deference is accorded even when the agency interpretation is not the only permissible interpretation that could be applied. Id. (citing Young v. CommunityNutrition Institute, 476 U.S. 974, 981, 106 S.Ct. 2360, 2365, 90 L.Ed.2d 959, 967 (1986)). Therefore, this Court will defer to the PUC with respect to its interpretation of its governing statutes and certificates of necessity it is authorized to administer and enforce. However, "it is a well-known maxim of statutory interpretation that this Court `will not construe a statute to reach an absurd [or unintended] result.'"Hargreaves v. Jack, 750 A.2d 430, 435 (R.I. 2000) (quoting Kaya v.Partington, 681 A.2d 256, 261 (R.I. 1996)).
In the Report and Order, Hearing Officer Stevenson concluded that "[t]he state law is very clear. A taxicab company cannot solicit or accept passengers outside its certificated territory. It does not mention telephone calls, it clearly speaks of passengers." (In Re East ProvidenceCab Co., Inc., Division of Public Utilities and Carriers Report and Order 16595 at 3 (May 8, 2001)). Concluding that a telephone call received at the appellant's office within its territory did not constitute "acceptance or solicitation which originates only within the territory specified in the certificate . . . ," Hearing Officer Stevenson found that the appellant's admissions regarding the business conducted outside East Providence were sufficient proof that it violated G.L. § 39-14-3.
The appellant further argues that PUC's decision of August 25, 1986 regarding East Providence Cab Co.'s request to expand its territory to Providence constitutes evidence that the appellant's interpretation is consistent with that of other PUC decisions. The PUC stated in the Report and Order that "[a]t the present time, the Applicant [appellant] has authority to provide service anywhere in the State, provided that solicitation is made within the City of East Providence. The Division [PUC] clearly interprets this as meaning that as long as a passenger ispicked up or discharged within East Providence, the taxicab can go anywhere in the state as directed by the passenger." (In Re EastProvidence Cab Co., Inc., Division of Public Utilities and Carriers Report and Order 12119 at 2 (August 25, 1986) (emphasis added)). In this decision, the PUC clearly interprets "solicitation" as picking up or discharging passengers in East Providence. This interpretation fails to include any reference to solicitation from outside East Providence by passengers over the telephone.
This Court defers to the PUC in its interpretation of the solicitation language in § 39-14-3 and the appellant's operating certificate. This interpretation did not reach an absurd or unintended result, and did not constitute an error of law. It is clear from the trip log and from the appellant's testimony before Hearing Officer Stevenson that East Providence Cab Company taxicabs did pick up and discharge passengers outside East Providence. (See Tr. at 52-56.) Therefore, the PUC's findings, based on the appellant's own record keeping and admissions that it violated G.L. § 39-14-3, are supported by the reliable, probative, and substantial evidence of record.
 The Penalty Provision
With regard to the penalty provision, § 39-14-11, the appellant claims that the PUC was without authority to assess a penalty over $100 per violation without first seeking criminal sanctions. The PUC argues that assessing the higher penalty under § 39-14-11(b) was well within its discretion as authorized by the General Assembly.
Rhode Island General Laws § 39-14-11 states that:
 (a) Any person or the officers of any association or corporation who shall violate any provision of sections 39- 14-1, 39-14-14, 39-14-25 and 39-14-26, or any order, rule, or regulation adopted or established under any provision, shall be fined not more than one hundred dollars ($100) or imprisoned not more than sixty (60) days or both, and his or her certificate may be revoked, and the violation shall be a separate and distinct offense for each day during which it shall continue.
 (b) The administrator may in his or her discretion in addition to seeking criminal sanctions, impose upon its regulated taxicabs and limited public motor vehicles an administrative civil penalty (fine) in addition to revoking or suspending the taxicab's and limited public motor vehicle's operating authority as conferred under this chapter. The fine shall not exceed one thousand dollars ($1,000) per each violation of the sections contained in this chapter or the division's orders, rules and regulations issued and promulgated thereunder.
(emphasis added.) It is clear from § 39-14-11(a) that the PUC has the authority to impose a monetary criminal sanction, jail time "or both." The appellant's argument that the PUC was without authority to assess the higher penalty authorized in § 39-14-11(b) because it did not also seek criminal sanctions is without merit. The General Assembly would not give the PUC discretion to penalize violators of the statutory scheme and at the same time require that a specific penalty be sought. City ofWarwick v. Aptt, 497 A.2d 721, 724 (R.I. 1985). Section 39-14-11(b) unambiguously gives the PUC discretion to impose an administrative civil penalty not exceeding $1,000 per violation in addition to criminal sanctions if they are appropriate. Again, this is a civil, not a criminal matter, and thus, the PUC had the authority to assess a civil penalty against the appellant of $500 per violation, within the $1,000 limit set forth in § 39-14-11(b).
This Court finds that the penalty imposed by the Hearing Officer was within his authority granted by statute and did not constitute an abuse of discretion. The PUC presented ample evidence on the record that the appellant violated G.L. § 39-14-3 by picking up and delivering passengers outside the territory allowed in its certificate. The January 10, 2001 taxicab log admitted into evidence showed that, on at least seven occasions, the appellant's drivers picked up and delivered passengers wholly within the City of Providence, outside its territory of East Providence. (Tr. at 34-40.)[2] Additionally, the appellant's testimony at the hearing supported the PUC's assertions that it knowingly violated § 39-14-3.[3] In its prior decisions reviewing PUC orders, the Rhode Island Supreme Court has ruled that "the findings of the board on questions of fact are to be held prima facie to be true, and an order of the board is not to be revoked unless it appears that its decision is against the weight of the evidence, or that the order is without the jurisdiction of the board, or is unlawful or unreasonable."Yellow Cab Co. v. Public Util. Hearing Bd., 73 R.I. 217, 224, 54 A.2d 28, 32 (1947). The record reflects that the findings and order in this case are supported by the weight of the evidence.
 Unconstitutional for Vagueness and Confusion
The appellant claims that G.L. §§ 39-14-3 and 39-14-11 are unconstitutionally vague and confusing in violation of its Due Process Rights. The language of those sections, the appellant argues, did not afford it "the opportunity to know what was prohibited, what was to guide their conduct or what penalty would be imposed for a violation." (Appellant's Mem. on Merits of Appeal at 12.) The PUC argues that the appellant cannot argue confusion and vagueness because it had actual notice from the PUC about the manner in which those regulations have been interpreted.
"In order for a statute to be found to be unconstitutionally vague and therefore violative of the due-process clause of the Fourteenth Amendment to the Constitution of the United States, the statute must fail to alert the public of the statute's scope and meaning." Bellevue Shopping Ctr.Ass'n v. Chase, 574 A.2d 760, 764 (R.I. 1990) (citing City of Warwick,
497 A.2d at 723-24). "Furthermore, it is well settled that a statute is unconstitutionally vague if it lacks explicit standards from its application and thus delegates power that enables enforcement officials to act arbitrarily with unchecked discretion." Fitzpatrick v. Pare,568 A.2d 1012, 1013 (R.I. 1990) (citing Grayned v. City of Rockford,408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222, 227-28 (1972)).
Rhode Island General Laws §§ 39-14-3 and 39-14-11 provide instructions to the taxicab industry about how such businesses should operate and the administrator's authority to impose penalties for violations of those instructions, respectively. The language of G.L. § 39-14-3 is clear in that it limits a taxicab company's acceptance or solicitation of passenger fares to those "which originate only within the territory specified in the certificate." (emphasis added). This section is not only clear and unambiguous, but also alerts those to whom the section applies as to its scope and meaning. Furthermore, the General Assembly established the penalty options for the PUC in § 39-14-11, but left their actual application to the PUC's discretion based on its interpretation. This Court defers to the PUC's penalty application as it finds that the appellant's interpretation would create an absurd result, clearly unintended by the PUC and in contravention of the terms of the statute. See Kaya, 681 A.2d at 261.
The appellant's claims that its due process rights were violated because the statutory scheme did not provide adequate notice or guidance about which activities were prohibited or allowed are not supported by the record. The appellant had sufficient notice that its interpretation of G.L. § 39-14-3 was not in accordance with the governing agency's interpretation. This Court notes that the PUC alerted the appellant, through writings, three times regarding the agency's accepted interpretation of the statute. The first time was in 1986 when the PUC denied the appellant's request to expand its territory into Providence. As earlier noted, the Hearing Officer explicitly stated in the order explaining his denial of the expansion that
 "the Applicant [appellant] has authority to provide service anywhere in the State, provided that solicitation is made within the City of East Providence. The Division clearly interprets this as meaning that as long as a passenger is picked up or discharged within East Providence, the taxicab can go anywhere in the state as directed by the passenger."
 In Re East Providence Cab Co., Inc., Division of Public Utilities and Carriers Report and Order 12119 at 2 (August 25, 1986) (emphasis added). The Hearing Officer gleaned from the then-owner's testimony that the owner wanted to pick up passengers outside East Providence only when the passengers' intended destinations were East Providence. Id. The record demonstrates the owner's focus on his business' contacts within East Providence was a key factor leading to the Hearing Officer's finding that this behavior was currently allowed under the appellant's certificate. Therefore, the PUC had sufficient evidence before it to conclude that the appellant knew that under his certificate of authority from the PUC, it could only leave its territory in pursuit of business if the passenger it picked up requested to be delivered back to East Providence.
Furthermore, the second notification was delivered by Compliance Officer Brooks's letter of October 20, 2000, sent in response to the appellant's letter, denying it violated § 39-14-3 or its certificate. Brooks had notified the appellant previously about Desrosiers' complaints and its legal transgressions, but notice was particularly effective when he stated in the letter that "[y]our response states that East Providence Cab Company is within their authority to pick up passengers outside their territory as long as the solicitation/acceptance is within the City of East Providence. This is incorrect." (Letter from Brooks to Appellant at 1 (Oct. 20, 2000)). The record demonstrates that this letter clearly conveyed to the appellant that the PUC did not agree with its interpretation and that as long as the appellant continued to conduct its business in accordance with that incorrect interpretation, it would be in violation of the statute and certificate.
Included with that correspondence was the third form of written notice delivered by the PUC about its interpretation of §§ 39-14-3 and39-14-11. Brooks sent a copy of In Re Airport Taxi, Inc., Division of Public Utilities and Carriers Report and Order 16421 (September 13, 2000), wherein the PUC ruled against a taxi company that argued, like the appellant, that telephone solicitation from outside its territory was allowed by the statute and certificate. Hearing Officer Stevenson found that the terms of the certificate limited Airport Taxi to T.F. Green Airport and the City of Warwick and that requests for service made over the telephone from outside the territory did not embrace the definition of solicitation as it is used in G.L. § 39-14-3 or in the certificate. Id. at 6. Because the Airport Taxi case and the case at bar are factually similar, the PUC's decision in the former served as appropriate precedent to the appellant in evaluating its conduct. It is clear from the record that the appellant had sufficient notice of the PUC's interpretation of the statute and certificate. Accordingly, this Court finds the appellant's deprivation of due process argument due to the vagueness and confusion of § 39-14-3 to be without merit.
With respect to the penalty scheme of § 39-14-11, the Airport Taxi
decision served as additional notice and guidance to the appellant from the agency as to the correct interpretation of its statutory language. InAirport Taxi, the PUC assessed the same $500 per violation penalty as was set in the appellant's case. The appellant received this decision from the PUC on October 20, 2000, which is almost seven months previous to the Hearing Officer's decision in its own case. The PUC's position on the imposition of penalties was sufficiently clear and unambiguous to put the appellant on notice that a similar penalty could be assessed against it. The appellant cannot argue that the PUC acted "arbitrarily with unchecked discretion" with regard to penalty assessment in its case when the agency made the exact decision in a factually similar Airport Taxi case less than a year earlier. Fitzpatrick, 568 A.2d at 1013 (citing Grayned, 408 U.S. at 108-09, 92 S.Ct. at 2298-99, 33 L.Ed.2d at 227-28).
Finally, because the appellant challenges the constitutionality of a state statute, pursuant to Super. R. Civ. P. 24(d), it has an obligation to "serve the attorney general with a copy of the proceedings within such time to afford the attorney general an opportunity to intervene." GlobalWaste Recycling v. Mallette, 762 A.2d 1208, 1214 (R.I. 2000). The appellant failed to give the Attorney General the opportunity to intervene and this Court should not "undertake to determine the constitutionality of a state statute in a given case without first affording the Attorney General the opportunity to intervene and be heard." Id.; See Crossman v.Erickson, 570 A.2d 651, 654 (R.I. 1990).
 Doctrine of Equitable Estoppel
The Rhode Island Supreme Court in El Marocco Club, Inc. v. Richardson
discussed the elements of a claim for equitable estoppel:
 "For equitable estoppel, or estoppel in pais, to apply, the following elements must be established: `first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury.'
El Marocco Club, Inc. v. Richardson, 746 A.2d 1228, 1233 (R.I. 2000) (citing Providence Teachers Union v. Providence School Bd., 689 A.2d 388, 391-92 (R.I. 1997)) (quoting Lichtenstein v. Parness, 81 R.I. 135, 138,99 A.2d 3, 5 (1953)). "'[T]he key element of an estoppel is intentionally induced prejudicial reliance.'" Id. at 1234 (citing East Greenwich YachtClub v. Coastal Resources Management Council, 118 R.I. 559, 568,376 A.2d 682, 686 (1977); Raymond v. B.I.F. Industries, Inc., 112 R.I. 192, 198-99, 308 A.2d 820, 823 (1973)).
The appellant invokes the doctrine of equitable estoppel in its final claim, arguing that because it relied on promises made by the PUC about the appellant's business practices, it is unjust for the PUC to change those promises. The PUC argues that it never made intentionally misleading promises to the appellant that would have made the appellant believe that its cabs were authorized to pick up and deliver passengers anywhere in the state as long as the request was received over the telephone at the appellant's place of business.
As the appellant did not meet the first burden as set out in El MaroccoClub, Inc. v. Richardson, its claim for equitable estoppel fails. It is evident from the record before the Hearing Officer that the PUC consistently articulated its interpretation of the taxicab regulations to the appellant who chose to rely on its own interpretation despite the fact that it differed from that of the PUC. (See FN 3; Tr. at 54-55.) This reliance was misplaced in 1986 when the PUC first had the opportunity to consider whether the appellant's certificate allowed pick up and delivery outside East Providence; was misplaced in 2000 when Brooks sent the cease and desist letter and the In Re Airport Taxi, Inc. decision to instruct the appellant that its interpretation and conduct was not in compliance with the agency's regulations; and was still misplaced in January of 2001 when the appellant continued to pick up and deliver passengers wholly in Providence, in violation of § 39-14-3
and its certificate and in total disregard of the PUC's directives.
The record does not reflect that the PUC made false representations with the intent of inducing it to rely on any alleged promises made by the PUC. Therefore, the appellant's claim that it is allowed to do business outside its East Providence territory because it acted in reliance on the PUC's representations that such conduct was allowed is not supported by the weight of the evidence of record.
 Conclusion
Upon review of the entire record in this matter, this Court finds that the PUC's decision is not in violation of constitutional or statutory provisions, was not in excess of the PUC's authority and was not clearly erroneous in view of the reliable, probative, and substantial evidence of the record. Moreover, the PUC, in making this decision, did not act arbitrarily or capriciously, and did not abuse its discretion. Substantial rights of the appellant have not been prejudiced. Accordingly, this Court affirms the May 8, 2001 decision of the PUC. Requests for attorneys' fees and costs are denied.
Counsel shall submit the appropriate order for entry.
[1] Paul Desrosiers operates a cab for a company that competes with that of the appellant.
[2] January 10, 2001 — Wayland Manor to 111 Westminster; Butler Hospital to Amtrak; 273 Wickenden to Brook Street; Squires Laundry to 273 Wickenden; Butler Hospital to Miriam Hospital; Butler Avenue to 333 School; Miriam (RISE) Building to V.A. See PUC Mem. in Response to Appellant's Mem. on Merits of Appeal at 5.
[3] The following exchange took place between the PUC's attorney and the appellant at the hearing:
Q. Do you view picking up and delivering in Providence as part of your normal routine territory?"
A. Yes.
Q. You view Providence as part of your normal territory?
A. Yes.
Q. On your certificate that the Division has issued you does it say that your territory is East Providence?
A. Yes.
Q. Does it say anything at all about Providence?
A. No. (Tr. at 52-53.)
Q. Do you recall receiving a letter from Mr. Brooks in October of 2000 saying that you shouldn't be picking up and delivering in Providence?
A. Yes. * * *
Q. Have you in fact continued to both pick up and deliver a single fare completely in Providence?
A. Yes.
Q. And that's since the cease and desist order?
A. Yes.
Q. Does that happen on a daily basis?
A. Sometimes; not every day.
Q. But pretty frequently?
A. Yes.
Q. Some days does it happen more than once?
A. Some days.
Q. And you are aware that Mr. Brooks' letter said that you shouldn't be doing that?
A. Yeah. (Tr. at 54-55.)