NELSON R. HALL *vs.* N. Y., N. H. & H. R. R. COMPANY.

APRIL 20, 1906.

PRESENT: Douglas, C. J., Dubois, Blodgett, and Parkhurst, JJ.

(1) *Master and Servant. Agency. Ratification.*

Plaintiff, a physician, was called by a station agent of defendant to attend an injured employee of defendant. Plaintiff procured a trained nurse for the employee and the following day prepared a report of the case and sent it to the principal offices of defendant. Twice after the accident the claim agent of defendant, together with the company's physician, visited the patient. Plaintiff remained in charge of the case. The plaintiff sent several bills to the defendant for his professional services. The defendant remained silent throughout the proceedings:—

*Held,* that whether the facts and circumstances surrounding the transaction did or did not constitute a ratification upon the part of the defendant was a question for the jury.

(2) *Verdicts. Reasonable charges.*

Where plaintiff had rendered several bills to defendant showing in detail the nature of his services and the amount of his charge, but defendant introduced no testimony tending to contradict that of the plaintiff, who had testified that the amount charged was reasonable, the court is unable to say that a verdict for the amount claimed by plaintiff is excessive.

(3) *Evidence.*

In an action to recover against a corporation for professional services rendered one of its employees at the request of another employee, evidence that the defendant had paid plaintiff for services rendered in other cases to which he had been called by employees at times subsequent to the services in the present case is inadmissible.

(4) *Evidence. Explaining testimony.*

It is within the discretion of the court to permit a party to explain the apparent discrepancy between his testimony and testimony produced by the other party.

(5)  *Evidence.   Authority of Agent to Bind Principal.   Ratification.*

Although a party should be permitted to show in evidence the authority of
its agents with respect to the employment of a physician in case of injury,
as well as its rules setting forth the duty and authority of its employees
in such an event, yet where a defendant knew that an employee had tran-
scended his authority and ratified such act, a refusal of the trial court to
permit the introduction of such evidence, is harmless.

ASSUMPSIT.   Heard on petition of defendant for new trial,
and denied.

DUBOIS, J.   This is an action of assumpsit brought to
recover the sum of $1,573.75, with interest, for services ren-
dered during a period of twenty weeks, and for supplies fur-
nished by the plaintiff, a physician and surgeon, to the de-
fendant's employee, a carpenter, who was injured, in the
course of his employment, at its power station in Warren, R. I.,
by steam and hot water in an accidental explosion.   The
defendant denies liability, and claims that it never engaged the
services of the plaintiff.

After verdict for the plaintiff, the defendant has petitioned
for a new trial upon the grounds that the verdict is against the
evidence; that the judge who presided at the trial erred in
his rulings and charge to the jury, and that the amount of the
verdict is excessive.

(1)   It appears that on December 6th, 1900, the plaintiff was
called to attend Jared E. Smith, the injured man, by the
defendant's station agent at Warren.   No evidence was
introduced tending to prove his authority in the premises, but
the plaintiff, having caused the sufferer to be removed from the
place of accident to his boarding-house in Warren; having sent
for the wife of the patient, who was at their home in New
Haven, Connecticut; having procured the services of a trained
nurse to assist him, and after attending to the immediate
necessities of his patient, prepared and sent to New Haven,
where the principal offices of the defendant company are
located, by Mr. Vinal, the foreman under whom said Smith
was working at the time of the accident, the following report:

"WARREN, R. I., December 7, 1900, 11:30 A. M.

"On the morning of December 6th, 1900, I was called to the power station in Warren, by Mr. Schultz, station agent, to attend to Jared E. Smith, who had been scalded by steam and hot water which came from condenser pipe. The scalds appear to be of the second degree, and involve both legs and the lower third of both thighs. The patient now suffers from prolonged shock and is much exhausted.

"NELSON READ HALL, M. D.

"Miss M. C. Pine, trained nurse, is in attendance.

"N. R. H."

What Mr. Vinal did with the report does not appear in evidence, but at the trial the defendant produced the same and used it in cross-examination of the plaintiff. No explanation was offered in behalf of the defendant as to how or when it obtained possession of the same, and in the absence of such explanation it is not unreasonable to infer that it was delivered to the defendant with reasonable celerity. What information was thereby communicated to the defendant by the plaintiff? The facts that at Warren, Rhode Island, on the day before its date, the physician had been called by Mr. Schultz, station agent, to the power station in Warren, to attend a person, whose name is given in full, who had been injured in the manner specifically set forth; the severity and location of the injury being technically described and the condition of the sufferer also set out. And it is made to appear that a trained nurse is also in attendance. This was not merely an item of news to which the attention of the defendant was invited. Nor was it a notice from Jared E. Smith, or in his behalf, calling attention to the fact that he was injured. It is a message from a doctor that he has been called by a station agent of the defendant to attend to and is still in attendance upon its severely injured employee; that he considers the sufferer his patient by virtue of that call, and has taken charge of him and placed a trained nurse in attendance. It is not a notice of services fully performed and completed, for it is not accom-

panied by a bill for the same. It is rather in the nature of a bulletin to the effect that an arduous surgical siege has been undertaken, with an account of the difficulties to be met and overcome. It is not contended in this case that it is beyond the power of the corporation to employ and pay for the services of physicians in case of injuries received by its employees in the discharge of their employment. But the defendant urges that,

"The defendant does not owe to its injured employees the duty of providing medical treatment for them. If an employee was injured in the course of his employment and was away from home and friends, the defendant might be liable for an emergency call, but as soon as the emergency ceases, the defendant's liability ceases." And that

"There was no contract on the part of the company to pay for the services of Dr. Hall to Smith. Mr. Schultz, the station agent, telephoned to Dr. Hall to attend a man who had been scalded." And also

"The doctor went with the injured man to his boarding-house and treated him there for twenty weeks.

"Clearly the telephone message from Mr. Schultz, if this was an employment of the doctor, was for the first visit only."

Assuming that the station agent was without any authority in the premises, or even that he was vested with authority to employ a physician for one visit only, if such were the facts they were known to the defendant and unknown to the plaintiff. Their rules and regulations are not generally made public, and there is no evidence that the plaintiff had any knowledge concerning the actual authority of the station agent. But he did not content himself with relying upon any such authority; on the very next day he made his report to headquarters—to the source of authority. What was the duty of the defendant in the premises? To let the plaintiff remain ignorant of the truth of the invalidity of his employment in its behalf? To permit him to incur large expense and employ valuable time in a malodorous and repulsive employment in the faith that he would be compensated by a responsible company, while that company intended that he should be compelled to resort

for payment to the non-resident injured mechanic, whose expenses would be greatly increased and whose resources would be greatly diminished, if not cut off, by this very accident which would deprive him for a long time of the ability to perform his daily toil? The ordinary physician is not an eleemosynary institution; and although he often does perform services for charity, it can not be expected that he will compete with the hospitals, that are established for general public use. It was the duty of the defendant to early apprise the plaintiff of the true condition of affairs; to either disaffirm the act of its station agent *in toto,* or to explain the extent of his authority to the plaintiff in order to give him the opportunity to make further arrangements for treatment of the patient beyond the time of any authorized limited employment. But the defendant did neither; it neither accepted nor rejected the services of the plaintiff under his supposed employment, but it elected to remain silent. What is the effect of silence in the circumstances of the case? It is an equitable axiom that he who remains silent when it is his duty to speak ought not to be allowed to speak when it is his duty to remain silent. There is also a species of estoppel *in pais* known as estoppel by silence, which arises in a case where a person, who, by force of circumstances, is under a duty to another to speak, refrains from so doing and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice. 16 Cyc. 681. Such silence constitutes acquiescence, and acquiescence of the principal in the unauthorized acts of his agent implies his ratification of the same. Technically, perhaps, there is this distinction between ratification by silence and estoppel arising therefrom: ratification acts by conferring the necessary power upon the agent, while estoppel acts by preventing the denial of the fact that the agent was originally clothed with the necessary power. Hence the former is called to aid the agent, while the latter is interposed as a barrier for the protection of the innocent party in the dispute. But by whichever name it may be called, its effect is the same.

The evidence further discloses that upon two occasions, the

first of which was soon after the accident, the claim agent of the defendant company and the company's physician, Dr. Eccleston, visited the patient to ascertain if he was in a condition suitable for removal to a hospital in Providence, and after examination upon each visit found that he was not. But no fault was found by them with the treatment that he was receiving at the hands of the plaintiff. It seems unlikely that the defendant was unapprised of these visits and their results.

It also further appears that on July 1, 1901, the plaintiff rendered the following bill to the defendant: "To professional services to Jared E. Smith, $1,573.75," and that on April 23d, and May 23d, 1902, similar bills were sent to it. No notice of them was taken by the defendant. Similar silence was maintained concerning the bills as was observed in the matter of the report.

Whether the facts and circumstances surrounding the transaction do or do not constitute a ratification upon the part of the corporation is a question of fact to be determined by the jury under proper instructions from the court.

The leading case upon this subject is that of *Toledo, Wabash & Western Railway Co.* v. *Joseph Rodrigues*, 47 Ill., 188, in which it appeared that one Johnson, a brakeman, in the employment of the railroad company, was run over by a locomotive and injured; that the station agent at Jacksonville, where the injury occurred, employed appellee to nurse and take care of Johnson, and told appellee that appellant would pay him for his services. Appellee performed the services and presented his bill to the station agent for payment. He wrote to the general superintendent, making a full statement of all that had been done, but there seems to be no evidence that this letter was received. After the account was rendered, the general superintendent conferred with the station agent in reference to the various items, and as to whether the charges were reasonable, when the superintendent said if they were reasonable he would pay the account, and made no other objections at the time.

The court held, *inter alia*, as follows:

"In this case, appellee was requested to render the service

by the local agent entrusted with the affairs of the company
at that station.   He wrote soon after to the general superin-
tendent, informing him of what had been done.   Having
written in the usual course of business, we must presume that
the letter was received.   Again, there is no evidence that he
countermanded the order, and not only so, but he, when the
bill was presented for payment, recognized the validity of the
contract and said he would pay reasonable charges for the
services, and based his only objection upon the high prices
charged.   This, in our judgment, made a clear case for a re-
covery, for a reasonable compensation, if these officers had
authority from the company to incur the liability.

"Whether the station agent had such power or not, the
general superintendent was clothed, and necessarily must be,
with large specific as well as discretionary powers.   As his
title implies, he has a general superintendence of the business
affairs of the road, and we deem it but a reasonable inference
to conclude that this was within the scope of these powers, and
when exercised, that the company must be held liable.   The
corporation is governed within the limits of its charter by the
adoption of rules and regulations for the purpose.   These
regulations govern the action of its officers.   By them they
confer powers and impose duties on their various agents and
officers; and by this means they exercise their franchises.
These regulations are private and not accessible to the public,
and hence the difficulty of other persons showing, except by
inference or circumstantial evidence, that any officer performs
any act within the scope of his authority.   It would, there-
fore, be unreasonable to require positive proof of such author-
ity.   That fact must be left to proof, as in other cases.   And
when it is known that the general superintendent manages
all the business of the road within his department, and binds
the company by contracts on its behalf, in regard to its general
business, it may be safely inferred that such a contract as
this was within the scope of his authority."

The authority of this case has never been doubted nor
denied, but has been affirmed and approved in *T. W. & W. Ry.
Co.* v. *Prince*, 50 Ill. 26; *Ind. & St. L. R. R. Co.* v. *Morris*, 67

Ill. 295; *M. & O. R. R. Co.* v. *Taft*, 28 Mich. 289; *Pac. R. R. Co.* v. *Thomas*, 19 Kan. 256; *T. H. & I. R. R. Co.* v. *Stockwell*, 118 Ind. 98; and in a case cited by the defendant—*Sevier* v. *B. S. & T. R. R. Co.*, 92 Ala. 258, at p. 262—the court held:

· "Unquestionably, the general superintendent may ratify the conductor's unauthorized employment, and, upon notice of the injury and the employment of the physician, the general superintendent, in order to avoid responsibility, should dissent, and notify plaintiff that the company would not be responsible. But this duty does not arise, and there can be no ratification, unless the superintendent is informed of the facts and circumstances of the employment of plaintiff."

Whether or not the defendant ratified the act of Mr. Schultz, its station agent, in employing the plaintiff to attend Jared E. Smith, therefore, was a question of fact to be determined by the jury. As their verdict was for the plaintiff, without any special finding, it may be safely assumed that they found a preponderance of evidence satisfying them of such ratification. We can not say that the verdict in this respect is against the evidence.

(2)    Although the plaintiff had rendered several bills to the defendant, beginning July 1, 1901, each showing the amount charged by him for the services for which this suit is brought, the defendant introduced no testimony tending to contradict that of the plaintiff, who went into a minute and detailed explanation of the nature of his services and testified that the prices charged by him for the same were reasonable. In such circumstances we are unable to say that the verdict is excessive.

In view of the conclusion to which we have arrived, namely, that the defendant had ratified the unauthorized acts of its station agent, the exceptions taken by the defendant to the admission by the court of questions concerning the duration and quality of treatment of the patient, the danger of leaving him without competent medical care, whether the plaintiff had requested the officials of defendant to furnish a surgeon in his place, and the like, are groundless and must be overruled.

(3)    It was error on the part of the presiding justice to permit

the plaintiff to testify, against the objection of the defendant, that it had paid him for services rendered in other cases, to which he had been called, by station agents and other of its officials, at times subsequent to the date of the commencement of his services in the present case. The course of conduct of the defendant since the accruing of the plaintiff's present claim could not have any retroactive effect; nevertheless such error was not harmful to the defendant. There was ample evidence of the defendant's ratification of the plaintiff's employment in the case at bar which could not be unfavorably affected by the rejection of such improper testimony.

(4)     The plaintiff testified that he had performed certain services for the defendant and had rendered to it bills for the same which the defendant paid; afterwards the defendant produced one of the bills, which was made out to one Walter Chase, and not to the railroad company. The court, against the defendant's objection, permitted the plaintiff to explain that the bill was not made out by him, but had been so erroneously made out, without his knowledge, by his assistant. To this the defendant excepted. The exception must be overruled; it was clearly within the discretion of the court to allow the plaintiff to explain the apparent discrepancy between his testimony and the bill produced by the defendant.

The defendant's exceptions to the testimony of various witnesses as to what Mr. Vinal saw or said with reference to the services of the doctor, or what Mr. Vinal said concerning the doctor's employment, can not be sustained; the weakness of the defendant's case will not be found in the acts or sayings of its subordinate officials, because it is an inherent attribute of the policy of inaction and silence imposed upon the corporation by those having predominance.

(5)     The defendant's exceptions to the refusal of the presiding justice to permit evidence to be introduced by it for the purpose of showing the actual authority of certain of its agents, with respect to the employment of a physician, and to his refusal to allow it to introduce its circular issued to its employees, setting forth their duty and authority in case of accidents requiring the services of physicians, while meritorious,

can not avail it, because no more could be shown by such testimony than already appears, to wit: that the station agent transcended his authority in the premises in employing the plaintiff. But knowledge of that fact was early brought to the attention of the defendant. The defendant made the rule, and the rule was binding upon its employees. But the power that made it could enlarge it at its option, and did enlarge it, by ratification, as we have already shown.

The several requests to charge were, in view of the conclusion to which we have arrived, properly refused, and the exceptions to such refusals are overruled.

Case remitted to the Superior Court, with direction to enter judgment on the verdict.

*Irving Champlin and John J. Lace, Jr.*, for plaintiff.

*Lewis A. Waterman*, for defendant.

