Isaac S. Lichtenstein *vs.* Aaron Parness *et al.*

AUGUST 21, 1953.

Present: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

136

O'CONNELL, J. This employee's petition was brought under the workmen's compensation act, general laws 1938, chapter 300, to adjudge an employer and his insurance carrier in contempt for failure to comply with the terms of a preliminary agreement entered into by the parties on June 27, 1951 and approved by the director of labor on July 10, 1951. The agreement fixed the average weekly wage of the employee at $50 and provided for compensation for total incapacity at the rate of $28 weekly commencing June 13, 1951. Compensation in accordance with the terms of this agreement was paid up to August 10, 1951. No further payments have been made since that date.

It is undisputed that as the result of a fall on November 17, 1950, while in the employ of respondent Aaron Parness, petitioner sustained bilateral inguinal herniae; that on June 13, 1951 he underwent an operation therefor; that he was discharged from the hospital on or about June 22, 1951; that about August 13, 1951 he returned to work; and that since that date he has received an average weekly wage equal to or greater than that which he was receiving at the time of his injury.

It appears in evidence that on August 13, 1951 counsel for petitioner informed the respondent insurance carrier, through its adjuster Harold W. Brown, that petitioner had

returned to work; that Brown thereafter prepared a suspension agreement or settlement receipt setting out eight and three fifths weeks as the period of disability and providing for total compensation of $240.80; and that on August 28, 1951 Brown sent this settlement receipt to petitioner's counsel for execution by petitioner. It further appears that thereafter such receipt was not returned; that between October 3, 1951 and February 4, 1952 Brown sent five letters to petitioner's attorney relating thereto without receiving any reply; and that on March 12, 1952 he was informed by counsel for petitioner that the latter would not execute any suspension agreement as he was having trouble with his legs.

The petitioner testified without contradiction that he did not know a settlement receipt had been sent to his counsel and that he had never executed any suspension agreement or signed such receipt. This latter claim was confirmed by Brown, who admitted also that respondents had never filed any petition for review of the preliminary agreement.

The trial justice, after the hearing, entered a final decree dated October 30, 1952 which provided that the preliminary agreement above referred to had been duly entered and was still in full force and effect; that no petition for review thereof had ever been filed by respondents; that no payments of compensation under the preliminary agreement had been made since August 10, 1951; and that respondents, being in default, were guilty of contempt but could purge themselves by paying petitioner the amount then in default. From such decree respondents have filed the instant appeal.

In support thereof they contend that this case is governed by *Zielonka* v. *United States Rubber Co.,* 77 R. I. 167, and not by the cases culminating in *Brown & Sharpe Mfg. Co.* v. *Giacoppa,* 69 R. I. 378. They further contend that even if the latter case were applicable, petitioner herein is estopped by reason of the conduct of his attorney with respect to the suspension agreement or settlement receipt

that was tendered to him on August 28, 1951 for petitioner's signature.

We cannot agree with these contentions. The *Zielonka* and *Brown & Sharpe Mfg. Co.* cases are clearly distinguishable on the facts. As pointed out in the former case at page 170, that proceeding was before this court on an *original* petition by the employee for compensation under the terms of the act, no previous agreement of any kind having been entered into by the parties. In the *Brown & Sharpe Mfg. Co.* case, as here, a preliminary agreement between the parties had been approved by the director of labor thereby imposing a continuing obligation on the employer to pay the employee until such agreement was properly modified or terminated under the act. As in that case, respondents here have undertaken to cease payments of fixed obligations under an existing preliminary agreement, which we have held has the force and effect of a decree, without filing a petition to review or otherwise obtaining a proper modification of the agreement. See *Zielonka v. United States Rubber Co., supra.*

Assuming without deciding that the defense of estoppel *in pais,* by conduct or by silence, can properly be invoked by respondents in the circumstances presently before us, we cannot agree that on this record the only inference which may be reached by the trial justice relative thereto must be resolved in favor of respondents. The indispensable elements of an estoppel are, first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury. The burden of proving the elements of such a claim is upon the one who asserts it.

In the instant case the failure of petitioner's counsel to return the suspension agreement or settlement receipt sent to him on or about August 28, 1951 and his failure to

answer five letters with reference thereto, the last letter being dated February 4, 1952, clearly is open to the inference that petitioner did not intend to sign such settlement receipt. This was confirmed on March 12, 1952 when respondents were definitely notified that petitioner refused to sign the receipt. Notwithstanding that fact they failed to file immediately a petition for review, which was available to them under G. L. 1938, chap. 300, article III, §13.

It is also to be noted that the instant petition for contempt was not filed until August 28, 1952. The trial justice could reasonably have inferred from such conduct that the silence of petitioner's attorney, if he had a duty to speak, could not possibly have misled respondents to fail to file a petition for review during the period between March 12 and August 28, 1952, when the petition for contempt was filed. Indeed it may reasonably be inferred that, although notified on March 12 of petitioner's refusal to sign a settlement receipt, respondents had not indicated any intention of filing a petition for review, but in effect had independently decided, solely on their own knowledge that petitioner was then receiving wages equal to or greater than the amount he was receiving at the time of his injury, to make no further payments under the existing agreement.

In any event the trial justice stated in his rescript with reference to the defense of estoppel: "It is necessary then, in the instant case, for the respondents to prove by a preponderance of the evidence that petitioner made a representation of the character above described. This Court does not perceive that the respondents have sustained this burden of proof." In reaching such conclusion the credibility of the witnesses and the weight of the evidence were solely for the trial justice's consideration. Unless his conclusion is unsupported by any evidence or reasonable inferences therefrom, we cannot say that he erred as a matter of law.

We have carefully examined the transcript and exhibits and in our opinion there was some legal evidence to support

the findings of the trial justice contained in the final decree appealed from. In such case in the absence of fraud, and none is claimed here, these findings are conclusive under the statute. *Brown & Sharpe Mfg. Co.* v. *Vincent,* 73 R. I. 309; *Baccari* v. *W. T. Grant Co.,* 73 R. I. 376.

The respondents' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

BAKER, J., dissenting. I am unable to agree fully with the opinion of the majority of the court. That opinion affirms in toto the superior court decree appealed from which finds, among other things, that respondents are in default of compensation payments allegedly due petitioner for total disability since August 10, 1951. It is my judgment that on the peculiar and undisputed facts of this case respondents, as a matter of law, are in default of such payments only for the period between August 10 and August 28, 1951 and also after March 12, 1952. In my opinion petitioner is estopped from claiming and obtaining payments of that nature covering the period between August 28, 1951 and March 12, 1952. I concur, however, with the remainder of the majority opinion.

The facts are generally as stated therein. After being operated on for hernia petitioner returned to work about August 13, 1951. From then on with the exception of a few days when changing jobs he worked continuously up to the time of the superior court hearing, receiving an average weekly wage equal to or greater than the one he received when he was injured. On August 13, 1951 his attorney voluntarily notified the claim adjuster for the employer's insurance carrier, a respondent herein, that petitioner had returned to work. It seems reasonable to construe this action at least as a suggestion and an expressed expectation that the adjuster would take such steps to clarify petitioner's situation as are ordinarily employed in such circumstances. Evidently the adjuster understood and viewed the situation in that light because shortly afterward he had

prepared the necessary suspension agreement or settlement receipt which on August 28, 1951 he properly mailed to petitioner's attorney rather than to petitioner himself. However, having received no reply of any kind within a reasonable time the adjuster thereafter wrote five letters to the attorney regarding the status of the matter, the last one on February 4, 1952. About March 12, 1952 the adjuster was informed that petitioner would not execute the agreement or receipt because he complained of pain in his legs. The petitioner testified in substance and without denial that it had never been called to his attention nor had he been informed that a suspension agreement had been submitted to his attorney.

In several cases this court has discussed the general principles of law relating to estoppel. In *Hunt* v. *Reilly,* 24 R. I. 68, it is stated at page 71: "The inducement of another to act; the omission to speak only when there is a duty to speak, with knowledge of the circumstances, are the recognized elements of an estoppel." In *Hall* v. *New York, New Haven & Hartford R. R.,* 27 R. I. 525, the following language appears at page 529: "There is also a species of estoppel *in pais* known as estoppel by silence, which arises in a case where a person, who, by force of circumstances, is under a duty to another to speak, refrains from so doing and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice." And in *Personal Finance Co. of Providence* v. *Henley-Kimball Co.,* 61 R. I. 402, the court stated at page 411: "In cases where such an estoppel *in pais* has been recognized and applied ordinarily facts are present which show some affirmative conduct or statement on the part of the person against whom the estoppel is set up, directed to the person who is seeking to establish the estoppel, which conduct or statement caused the latter person to change his position to his loss or injury. Also, silence on the part of one upon whom there is a duty to speak and make facts known, if damage follows, will likewise usually create such an estoppel." See also 31 C.J.S., Estoppel, §87, p. 304.

In the above-cited cases, after consideration of the facts appearing therein, this court in two of them held that no estoppel had been shown but in the other case supported the claim of an estoppel. It is clear that each case of this kind must rest on its own facts. In the instant proceeding the decisive question is whether petitioner's attorney was, in the circumstances, under a duty to speak and make the facts known to the adjuster of the insurance carrier, after receiving from him for execution the suspension agreement or settlement receipt. It cannot be questioned that petitioner is bound by the acts of his duly appointed agent, the attorney who was representing petitioner in the handling of the litigation.

It is well settled that mere silence alone will not raise an estoppel when there is no duty or opportunity to speak. A person is ordinarily not bound to respond to every written statement, charge or communication made to him, and his failure to do so does not necessarily amount to an acquiescence in it so as to create an estoppel. An example of a typical case so holding is *Furst* v. *Carrico,* 167 Md. 465. In my judgment, however, the facts in that case and in cases of a similar nature are so different from the facts here that they are clearly distinguishable.

The instant case is not one in which some letter or other writing containing statements or charges by another is, without previous notice, sent to a person who does not see fit to answer them. Here petitioner's attorney himself, without having been asked, brought to the attention of the insurance carrier's adjuster the fact that petitioner had returned to work, thus starting in motion the train of circumstances which thereafter followed and for which such attorney had a responsibility. The adjuster was not the original moving party.

In view of the circumstances appearing in this case, I am of the opinion that the adjuster had a reasonable right to expect that in due course he would receive some response from petitioner's attorney after the agreement or settlement

receipt had been sent to him on August 28, 1951. The fact that thereafter the adjuster attempted to obtain some answer from the attorney was not unreasonable conduct considering all the circumstances. It is my judgment therefore that by reason of the particular facts of this case petitioner's attorney was under a duty to speak and make known the facts to the adjuster within a reasonable time after receiving the agreement or receipt. However, he did not so speak, failing seasonably to make known the fact that petitioner would not sign the agreement or settlement receipt, which conduct resulted in prejudice and damage to the respondents.

Consequently it is my opinion that petitioner is estopped from claiming and obtaining from respondents payments of compensation for total disability covering the time between August 28, 1951 and March 12, 1952 during which he was working and receiving his full weekly wages.

CAPOTOSTO, J., concurs in the dissenting opinion of Mr. Justice Baker.

*Israel H. Press, Isadore S. Horenstein,* for petitioner.
*Boss & Conlan, Francis W. Conlan,* for respondent.