**Supreme Court**

Albert A. Faella et al.       :       No. 2013-103-Appeal.
(PB 10-311)

v.       :

Joseph Chiodo, in his capacity as Finance   :
Director for the Town of Johnston et al.

Alan Ross       :       No. 2013-104-Appeal.
(PB 10-60)

v.       :

Town of Johnston et al.       :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  | **Supreme Court** |
| --- | --- | --- |
| Albert A. Faella et al. | : | No. 2013-103-Appeal. |
|  |  | (PB 10-311) |
| v. | : |  |
| Joseph Chiodo, in his capacity as Finance Director for the Town of Johnston et al. | : |  |
|  |  |  |
| Alan Ross | : | No. 2013-104-Appeal. |
|  |  | (PB 10-60) |
| v. | : |  |
| Town of Johnston et al. | : |  |

Present:  Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  The defendant, Town of Johnston (Johnston or town)[1] appeals the grant of summary judgment in favor of John DiMaio (DiMaio), Albert A. Faella (Faella), and Alan Ross (Ross) (collectively plaintiffs).  Additionally, the town appeals the denial of its motion for summary judgment[2] in these consolidated cases arising out of a dispute between the town and the plaintiffs, who are all former Johnston police officers who retired on injury disability.  For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

---

[1] By stipulation, counts against defendant Citigroup Global Market, Inc. were dismissed without prejudice.  ING Life Insurance and Annuity Company (ING) was granted a motion for leave to interplead funds; and later, because no further claims were asserted against it, the complaint against ING was dismissed with prejudice.

[2] At oral argument, the town's counsel indicated that he was only pressing the argument that the granting of summary judgment in favor of plaintiffs was improper.  We therefore proceed only to address the propriety of that judgment.

**I**

**Facts and Travel**

At the heart of this litigation is plaintiffs' claimed entitlement to distributions from certain accounts maintained by ING Life Insurance and Annuity Company (ING). The intended purpose of these accounts and how they may have been altered by subsequent agreements is highly disputed.

The accounts were established in response to the execution of a document between the town and the Aetna Life Insurance and Annuity Company[3] with an effective date of April 26, 1984. The document (ING Agreement),[4] which is titled "Town of Johnston Police Officers Deferred Compensation Plan," was signed on the master application sheet by the then-mayor, Ralph aRusso (Mayor aRusso),[5] on behalf of the town; and was signed by an agent for ING. The master application sheet indicated that the agreement was to qualify under section 457 of the Internal Revenue Code (Code) and that there would be both employee and employer contributions made under the agreement. The master application sheet also indicated that the agreement was intended to replace or otherwise modify an existing contract.

Under the ING Agreement, two accounts were established on behalf of each police officer participant: (1) a fixed account into which the town would contribute a percentage of each participant's annual compensation; and (2) a participant account into which the participant

---

[3] Aetna Life Insurance and Annuity Company is the predecessor in interest of ING. For clarity, both entities will be referred to as ING.

[4] Interestingly, the ING Agreement provided in plaintiffs' appendices is a different version from the document provided by the town. However, all of the parties provided identical master application sheets for their respective versions of the ING Agreement.

[5] The background surrounding Mayor aRusso's name change and the accompanying creative electioneering tactics in Johnston are chronicled on Quahog.org. See "aRusso vs. aaRussillo." http://www.quahog.org/factsfolklore/index.php?id=113.

would contribute a percentage of his compensation (collectively ING Accounts).[6]  Although the town has been listed as the owner of both sets of accounts, the accounts have been maintained with the participant's name and social security number.  The town acknowledges that the town and plaintiffs have consistently made contributions in the amount of 12 percent and 6 percent, respectively, into the ING Accounts.

At the time the ING Agreement was to become effective (April 26, 1984), a collective bargaining agreement (CBA) was in place between the town and the International Brotherhood of Police Officers Local 307 (IBPO).  In place until June 30, 1985, that CBA makes no mention of employer or employee contributions or the ING Accounts.  However, a subsequent CBA, which covered the period from July 1, 1986 to June 30, 1987, contains references to employer and employee contributions into a retirement fund at 12 percent and 6 percent, respectively.  The references are under a section titled "Early Retirement Provisions," which provides for employees' withdrawal of contributions from the retirement fund under certain conditions.  Additionally, the section states that "[t]he giving back of retirement funds dates back only to the time the Pension Plan became effective, which was approximately 1977 or thereabouts."  The language from this section has appeared in every subsequent CBA.

Another document which is the cause of much contention between the parties is titled "Town of Johnston Police Department Pension Plan."  The document (1993 Plan) purports to have been executed on October 25, 1993, between Mayor aRusso and a representative from the "Town of Johnston Police Union."  The 1993 Plan was also signed by the town's finance director, ex officio, as "Trustee."  However, the document was not signed by any individual representing ING.

---

[6] A fixed account provides a fixed rate of interest to the contribution.  Individual participants could opt to contribute to either a fixed account or a variable account with a non-fixed rate of interest.

Among the provisions of the 1993 Plan is section 4.1, titled "Formula for Determining Employer's Contribution," which states, inter alia:

"(a) * * * On behalf of each Participant for each year of his participation in this Plan, the Employer shall contribute 12% of his annual Compensation.

"(b) As a condition of Plan Participation each Participant shall agree to contribute 6% of his Compensation to the Trustee. Such Contribution shall be credited to his Participant's Account and shall share in Trust earnings and losses."

Additionally, section 6.3 of the 1993 Plan, titled "Determination of Benefits in Event of Disability," provides:

"In the event of a Participant's Total and Permanent Disability, the Trustee shall distribute to such Participant all amounts credited to such Participant's Account.

"Any disability benefits paid under this Plan, as a result of Employer Contributions, shall reduce and off set [sic] any statutory disability benefits to which the Employee might otherwise be entitled."

Of note, however, is that nowhere in the 1993 Plan is there a reference to section 457 of the Code. Also inexplicably absent is the first page of the 1993 Plan. Further, the 1993 Plan clearly states in section 9.14(a) that "[n]otwithstanding anything herein to the contrary, contributions to this Plan are conditioned upon the initial qualification of the Plan under Code Section 401."

At the time the 1993 Plan was purportedly executed, there was in place between the town and IBPO a CBA that covered the period from July 1, 1993 to June 30, 1995. The subsequent CBA, which covered the period from July 1, 1995 to June 30, 1998, and was executed on behalf of the town by a mayor other than Mayor aRusso, does not reference the 1993 Plan. However, added to that CBA was a section titled "Disability Pension," which states in pertinent part:

"All police officers of the Johnston Police Department who are injured in the line of duty and qualify for a disability pension shall receive from the Town the difference between what is his or her pension payments and sixty-six and two-thirds (66 2/3) percent of what his or her salary was at the time of the injury."

The town avers that plaintiffs have received a disability pension pursuant to this section, which went substantially unchanged in subsequent CBAs that each plaintiff retired under.

A major point of contention in this case is the validity, or lack thereof, of the various documents and agreements discussed above. The town argues that its town charter provides that the mayor's authority to enter into contracts on behalf of the town requires approval by the town council. However, a review of the town records by the town clerk indicates that there is no evidence that the town council ever ratified the creation of the ING Accounts, the 1993 Plan, or any of the CBAs prior to the CBA executed in 2001.

On December 9, 2002, per the request of the town,[7] a report (H&H Report) was issued by the actuarial consulting firm Hooker & Holcombe which reviewed the "technical, administrative and financial aspects" of the town's police department pension plan. The H&H Report reviewed 20 CBAs between the town and IBPO covering a period from 1977 through 2004 and the 1993 Plan in its analysis. The H&H Report assumed the validity of all of the CBAs and the 1993 Plan. In the H&H Report's summary of current plan provisions, it recognized that there were employee and employer contributions being made to the pension plan at the rate of 6 percent and 12 percent of total employee compensation, respectively. Among the comments the H&H Report made was that the:

> "Plan assets are invested in a 457 plan administered by ING. We believe these are the employee and employer contributions that should have been paid to the defined benefit pension plan. The 457 monies should be transferred to the defined benefit plan if possible." Article VI, Comments.

The H&H Report recommended that the town, inter alia, "[s]eek agreement from the union to transfer assets from the 457 plan to the pension plan * * * [and] [d]raft a new defined benefit plan document and have it approved by the Town and the Union." Article VII,

---

[7] It appears to be contested by the town whether or not the town council, as opposed to some other individual from the town, commissioned the report.

Recommendations. Further, it was recommended that this new document would "[s]upercede [sic] and replace the 1993 document[.]"

The next CBA (the 2005-2008 CBA) negotiated between the town and IBPO after the issuance of the H&H Report added a section titled "Pension Contributions," which required police officers to contribute 6 percent of their gross pay. The section did not include language obligating a contribution on the part of the town, nor did it specify where the police officers' contributions would be placed. Under that same CBA, a provision was added to the section titled "Pension Committee," which stated:

> "In the event any pension plan document, pension trust document or any other pension document conflicts with the provisions of this Agreement, the language of this Agreement controls and supersedes any language which is inconsistent or may be construed as inconsistent regarding the pension plan."

The town contends that the only benefits it is obligated to provide to plaintiffs are those obligations derived from the CBAs.

The plaintiffs are all former Johnston police officers who retired due to injury disability. DiMaio was placed on disability retirement in March of 2004, Faella in December of 2007, and Ross in October of 2008. Each retired officer has received a disability pension from the town. In addition, each officer has sought a distribution of all amounts credited to the respective ING Accounts maintained under the officer's name. The town has refused to authorize such distributions.

On January 6, 2010, Ross filed a complaint in the Providence County Superior Court seeking declaratory and injunctive relief regarding entitlement to funds held in the ING Accounts bearing his name. On January 15, 2010, DiMaio and Faella filed a complaint in the Providence County Superior Court seeking the same declaratory and injunctive relief as well as damages for conversion and attorney's fees. The actions were consolidated, and the parties cross-moved for

summary judgment. After a hearing and reviewing the memoranda submitted by the parties, the Superior Court filed a written decision on December 5, 2011, denying the town's motion for summary judgment and granting plaintiffs' cross-motions for summary judgment. Final judgment was later entered, and the town timely appealed.[8]

## II

## Standard of Review

In passing on a motion for summary judgment, a hearing justice "must review the pleadings, affidavits, admissions, answers to interrogatories, and other appropriate evidence from a perspective most favorable to the party opposing the motion." Estate of Giuliano v. Giuliano, 949 A.2d 386, 391 (R.I. 2008) (quoting Steinberg v. State, 427 A.2d 338, 340 (R.I. 1981)). "[I]n reviewing these materials, the motion justice should draw all reasonable inferences in favor of the nonmoving party and must refrain from weighing the evidence or passing upon issues of credibility." Lerner v. Ursillo, 765 A.2d 1212, 1216 (R.I. 2001) (quoting Hendrick v. Hendrick, 755 A.2d 784, 789 (R.I. 2000)). Further, "[a]lthough a motion justice entertaining such a motion may 'search for the existence of factual issues,' he or she 'may not determine them * * *.'" Takian v. Rafaelian, 53 A.3d 964, 975 (R.I. 2012) (quoting McPhillips v. Zayre Corp., 582 A.2d 747, 749 (R.I. 1990)). Indeed, a hearing justice's "belief that one scenario is more probable than the other is not a legally sufficient reason to grant a motion for summary judgment." Id. (quoting McPhillips, 582 A.2d at 750).

We have described summary judgment as a "drastic remedy * * * [that] should be dealt with cautiously." Coogan v. Nelson, 92 A.3d 213, 216 (R.I. 2014) (quoting NV One, LLC v.

---

[8] On April 10, 2012, the Superior Court granted the town's motion for a stay conditioned upon the posting of supersedeas bonds for each plaintiffs' appeal. Also, the funds at the center of this litigation that were placed into the registry of the court by ING were to be deposited into a mutually agreeable private investment account.

Potomac Realty Capital, LLC, 84 A.3d 800, 805 (R.I. 2014)). We review a hearing justice's "grant of summary judgment de novo, employing the same standards and rules used by the hearing justice." Rhode Island Joint Reinsurance Association v. Santana-Sosa, 92 A.3d 192, 196 (R.I. 2014) (quoting NV One, LLC, 84 A.3d at 805).

## III

## Discussion

The hearing justice concluded that the 1993 Plan was binding on the town and was not preempted by provisions in the various CBAs, and therefore, ultimately, plaintiffs were entitled to distributions from the ING Accounts in addition to any pension payments they were to receive from the town. He determined that the town "silent[ly] acquiesce[d] to the actions of Mayor aRusso by annually appropriating funds" into the ING Accounts. He also found that IBPO (not necessarily plaintiffs) relied upon the town's behavior and therefore, the town should be equitably estopped from denying the validity of the ING Agreement and the 1993 Plan.

Indispensable to the successful invocation of the doctrine of equitable estoppel is the establishment of: "[F]irst, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury." Cigarrilha v. City of Providence, 64 A.3d 1208, 1213 (R.I. 2013) (quoting Lichtenstein v. Parness, 81 R.I. 135, 138, 99 A.2d 3, 5 (1953)). Further, the applicability of equitable estoppel is dependent upon "[t]he facts and circumstances of each case * * *." Lerner v. Gill, 463 A.2d 1352, 1362 (R.I. 1983).

It must be emphasized that "[e]quitable estoppel is extraordinary relief, which will not be applied unless the equities clearly [are] balanced in favor of the part[y] seeking relief."

Sturbridge Home Builders, Inc. v. Downing Seaport, Inc., 890 A.2d 58, 67 (R.I. 2005) (quoting Southex Exhibitions, Inc. v. Rhode Island Builders Association, Inc., 279 F.3d 94, 104 (1st Cir. 2002)). Indeed, "equitable estoppel is not a favored doctrine * * * [and should be] applied carefully and sparingly and only from necessity. Each of the elements of estoppel must be proved with the requisite degree of certainty; no element may be left to surmise, inference, or speculation." 28 Am. Jur. 2d Estoppel and Waiver § 166 at 633 (2011).

Against a municipality, the route to relief relying on the doctrine of equitable estoppel is even more rigorous.[9] See Casa DiMario, Inc. v. Richardson, 763 A.2d 607, 612 (R.I. 2000) ("As a general rule, courts are reluctant to invoke estoppel against the government on the basis of an action of one of its officers." quoting Lerner, 463 A.2d at 1362). "[E]stoppel against a [public entity] * * * must be predicated upon the acts or conduct of its officers, agents or official bodies acting within the scope of their authority." Potter v. Crawford, 797 A.2d 489, 492 (R.I. 2002) (quoting Romano v. Retirement Board of the Employees' Retirement System of Rhode Island, 767 A.2d 35, 42 (R.I. 2001)). A party may not rely on estoppel for relief "when a governmental employee's actions clearly are ultra vires." Waterman v. Caprio, 983 A.2d 841, 846 (R.I. 2009).

It is axiomatic that the party seeking relief under the doctrine of equitable estoppel bears the burden of proving the necessary elements. See Lichtenstein, 81 R.I. at 138, 99 A.2d at 5. Generally, whether a party "has met that burden in a particular case is an issue of fact" to be resolved by the factfinder. Herbert S. Newman and Partners, P.C. v. CFC Construction Limited Partnership, 674 A.2d 1313, 1323 (Conn. 1996); see 28 Am. Jur. 2d § 175 at 640; cf. Lerner, 463

---

[9] Indeed, we have said:
> "[A]ny party dealing with a municipality is bound at his own peril to know the extent of its capacity. * * * [A] person's failure to discover the true scope of a government agent's actual authority will not provide any grounds to relieve that person's detrimental reliance upon the agent's representations or actions."

Potter v. Crawford, 797 A.2d 489, 492-93 (R.I. 2002) (internal quotation marks and citations omitted).

- 9 -

A.2d at 1362 (recognizing that whether the imposition of estoppel is warranted is dependent on "[t]he facts and circumstances of each case"); but see Greenwich Bay Yacht Basin Associates v. Brown, 537 A.2d 988, 992 (R.I. 1988) (recognizing that there can be cases where there exist "no facts from which a trier of fact could find that * * * application of the doctrine of equitable estoppel" was warranted).

With the foregoing principles in mind, we are constrained to conclude that summary judgment in favor of the plaintiffs was not warranted. Even "[a]ssuming without deciding that the [doctrine] of [equitable] estoppel * * * can properly be invoked by [plaintiff]s in the circumstances presently before us, we cannot agree that on this record the only inference which may be reached * * * must be resolved in favor of [plaintiff]s." Lichtenstein, 81 R.I. at 138, 99 A.2d at 5. Because there are a multitude of factual issues that must be resolved, we find that summary judgment in favor of the plaintiffs, who bear the heavy burden of proving entitlement to relief under the doctrine of equitable estoppel, was not warranted.

## IV

### Conclusion

For the reasons set forth in this opinion, we vacate the judgment in this case and remand the record to the Superior Court.


Justice Flaherty did not participate.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    Albert A. Faella et al. v. Joseph Chiodo, in his capacity as Finance Director for the Town of Johnson et al.

Alan Ross v. Town of Johnston et al.

**CASE NO:**    No. 2013-103-Appeal.
(PB 10-311)

No. 2013-104-Appeal.
(PB 10-60)

**COURT:**    Supreme Court

**DATE OPINION FILED:**    March 30, 2015

**JUSTICES:**    Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Michael A. Silverstein

**ATTORNEYS ON APPEAL:**

For Plaintiffs:  Michael J. Lepizzera, Jr., Esq.
Timothy J. Robenhymer, Esq.

For Defendant:  William J. Conley, Esq.